Helen Lynn O'MARTIN, Appellant,

v.

Dorothy McCAFFREY, Administratrix of the Estate of Leo Joseph Martin, Deceased, Defendant,

Southwestern Insurance Company, a corporation, Appellee.

No. 48861.

Court of Appeals of Oklahoma, Division 2.

Aug. 17, 1976.

Rehearing Denied Oct. 8, 1976.

Certiorari Denied Feb. 8, 1977.

Released for Publication By Order of Court of Appeals Feb. 10, 1977.

Howard K. Berry, Sr., Berry, Nesbitt & Berry, Oklahoma City, for appellant.

D. C. Thomas, Oklahoma City, for appellee.

BRIGHTMIRE, Judge.

Is it a rhetorical illusion wrought by sleight-of-hand scrivenery that underlies the garnisheed insurance company's repudiation of its contractual responsibility for injuries an insured automobile driver inflicted on his guest passenger? The appealing passenger implies it is in attacking an order dismissing her garnishment action.

I

Early Christmas morning, 1971, Helen O'Martin was riding as a guest passenger in a car driven by the late Leo Joseph Martin. They were enroute from Oklahoma City to Sayre, Oklahoma where they planned to spend the day with her parents. They nev-er got there. Not far from the capitol city Martin lost sight of the fog-enshrouded highway and crashed into a utility pole killing himself and badly wounding passenger O'Martin. She obtained a judgment against Martin's estate which was appealed and affirmed by us October 15, 1974.[1]

The judgment apparently was not superseded because on July 18, 1973, O'Martin commenced this garnishment action against Martin's liability insurer, Southwestern Insurance Company of Oklahoma City. The insurance company joined issue by denying coverage on the theory that Martin's liability to O'Martin was excluded under the terms of its policy. The trial court agreed and on July 8, 1975, dismissed the garnishment proceedings. The judgment creditor now finds herself in the appellate court a second time.

II

As mentioned by the insurance company, there is but a single question for us to decide and that is whether the trial court correctly concluded that "the language of Exclusion . . . (j) exclud[ed] payment of benefits to the plaintiff passenger [O'Martin] for bodily injury . . . ." We hold the conclusion was incorrect for two reasons: (1) Exclusion (j) does not apply to passengers who suffer injury arising out of the insured's operation of an automobile; and (2) if it did, it would be void as against public policy.[2]

III

The insurance company's contention is that "Part I" of its policy—the part wherein the company promises to pay, on behalf of its insured, damages resulting from bodily injury sustained "by any person . . . *arising out of the operation of* . . . any . . . automobile"—does not apply because Ms. O'Martin's injuries come within

1. Supreme Court No. 46,636, unpublished opinion. Cert. den. December 17, 1974.

2. *Hibdon v. Casualty Corp. of America, Inc.*, Okl.Ct.App., 504 P.2d 878 (1972) holds that passenger exclusion in a motor vehicle liability policy is contrary to the intention of the financial responsibility act and is void. 47 O.S.1971 § 7–324(b)2.

the scope of the tenth enumerated exclusion, (j), which reads: "This policy does not apply under Part I: . . . (j) to bodily injury to . . . any person *arising out of their occupancy*[3] of an automobile while operated by the insured." (emphasis added) The argument is that (j) is intended to deny coverage to a passenger such as O'Martin.

The creditor, on the other hand, says the exclusionary sentence is structurally unsound, grammatically nonsensical, and ambiguous. And because of this, a deeper judicial probe of its language for meaningfulness is necessary—a probe which must construe the exclusionary words strictly, narrowly, and against the insurer, citing *Conner v. Transamerica Ins. Co.*, Okl., 496 P.2d 770 (1972).

She is right. Quite aside from the incredibly poor grammar used in the 1959 "approved" standard policy form,[4] we are satisfied Exclusion (j) does not say and was not intended by its author to mean that it excludes, from Part I coverage, bodily injury to a person which arises from the insured's operation of an automobile carrying the injured person as a passenger.

The syntax of Exclusion (j) suggests at least three possible interpretations, none of which is the one sponsored by the insurance company and none of which deprives Ms. O'Martin of coverage.

The first possibility is demonstrable by reframing the exclusion this way: "This policy does not apply to a person injured while arising (getting up) from his occupancy (seat) of a car operated by the insured." This construct assumes the word "arising" is used in the policy as a participle modifying the word "person" and raises the grammatical permissibility that the participle in turn is modified by the prepositional phrase "out of their occupancy." While this interpretation may seem a bit "far out" to those familiar with the insurance industry's argot, we do not think it would seem so to a great many unsophisticated contractees.

We, of course, reject this meaning as probably not the one intended by the author because of contextual implications of other policy provisions. But even if it were the meaning intended, it would not bar coverage because the record contains no evidence O'Martin voluntarily tried to arise from her occupancy at any time while Martin was operating the automobile or that she was injured in such an attempt.

Another construction of Exclusion (j)—one only a little less far-fetched than the insurance company's—centers on the phrase "while operated by the insured." These words imply that regardless of whether "arising" relates to "person" or "injury," as discussed earlier, the insured must be actively engaged in the operation of the automobile in which the occupant is getting up or getting injured. Here, however, the circumstances suggest that the injuries occurred at a time when Martin had lost control of the crashing car and was therefore not operating it!

The third possible meaning of the clause involves use of "arising" as a participle modifying the word "injury," resulting in this paraphrasis: "This policy does not apply to bodily injury sustained by a person in an automobile being operated by the insured, if the injury results from the act of occupying." This, in our opinion, is the proper interpretation of the exclusion and is achieved by defining "arising" in the same sense it is used earlier in the policy's insuring provision—"arising out of the operation of the owned automobile"—namely, as connoting a substantial causal nexus between the act of occupying and the injury. In other words, the injury must in some way be the effect or result of the occupancy itself, as distinguished from either the operation of the occupied car or some outside force.

There are several reasons why this is true. In the first place, this exegesis com-

---

**3.** The policy defines "occupancy" thus: " 'occupancy' means in or upon or entering into or alighting from an automobile operated by the insured . . . ."

**4.** Among other things the plural pronoun "their" in Exclusion (j) does not agree in number with what presumably is its singular antecedent "person."

ports with the meaning attributed to the phrase "arising out of" by the Oklahoma Supreme Court and other appellate courts. *Belscot Family Center v. Sapcut*, Okl., 509 P.2d 905 (1973); *Vanguard Ins. Co. v. Cantrell*, 18 Ariz.App. 486, 503 P.2d 962 (1972); *Westchester Fire Ins. Co. v. Continental Ins. Co.*, 126 N.J.Super. 29, 312 A.2d 664 (1973); *Garriguenc v. Love*, 67 Wis.2d 130, 226 N.W.2d 414 (1975).

Moreover, to construe Exclusion (j) otherwise would seem to create a ludicrous incongruity between the insuring agreement and the exclusion, in that a person who saw a potential operative injury coming and instinctively reacted by jumping up (arising) to prevent it would, if he unfortunately suffered injury anyway, exclude himself from the insurance coverage. To avoid such an absurdity, the insurance company contends, in effect, that the phrase "arising out of" must be defined differently in the insuring clause than in the exclusion; and for the latter, it recommends we delete "arising out of" and substitute the verbal form "occupying" for the noun form "occupancy." This, however, would not only impermissibly require rewriting the insurance contract, but would achieve an antipublic-policy result.[5]

When all is said then, the last of these three possible interpretations emerges apagogically as the choice of reason—the one permitting the exclusion to exist harmoniously with other terms of the insurance contract. More particularly, reconciliation of the insuring agreement and the nullifying clause is sensibly accomplished by restricting the scope of Exclusion (j) to an ordinary contextual and grammatical meaning, namely, to injuries which have nothing to do with the vehicular operation, but arise solely out of the act of occupying, such as bumping one's head upon entering or spraining an ankle while alighting from an automobile while it is being operated by the insured.

### IV

We hold Exclusion (j) is inapplicable to the damages resulting from Helen O'Martin's injuries she received on Christmas 1971. The order dismissing her garnishment action against Southwestern Insurance Company is vacated and the action is remanded for further proceedings.

BACON, P. J., and NEPTUNE, J., concur.

---

5. *Hibdon v. Casualty Corp. of America*, supra note 2.