972 F.2d 1348
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES FIDELITY & GUARANTY, a Maryland corporation,
Plaintiff-Appellant,
v.
John B. RIGGS; Jennifer J. Riggs; Imperial Casualty and
Indemnity Company, a foreign corporation,
Defendants-Appellees.
 No. 91-15198.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted March 9, 1992.
Decided July 27, 1992.
 
 Before BOOCHEVER, REINHARDT and BEEZER, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 United States Fidelity and Guaranty Company ["USF & G"] appeals the district court's grant of summary judgment in favor of Imperial Casualty and Indemnity Company ["Imperial"] in USF & G's insurance contribution action. The district court held that Imperial's policy with John Riggs ["Riggs"] excluded coverage for injury to Lois McLane, a third party. We reverse and remand for a determination of whether Riggs negligently performed architectural services causing McLane's injuries and, if so, for an allocation of liability between USF & G and Imperial.
 
 STATEMENT OF FACTS
 
 3
 Lois McLane, an invitee in the home of John Riggs, was injured when she fell through an uncovered opening in the floor of Riggs' home. Riggs is a licensed architect. He designed the home and contracted its construction. The design incorporated the opening in the floor.
 
 
 4
 McLane sued Riggs. Count one of her Complaint alleged that Riggs violated the duty which a homeowner owes to an invitee. Count two alleged that Riggs breached the standard of care required of architects when he designed the plans for the floor opening.
 
 
 5
 Riggs was insured by an Architects, Engineers and Construction Managers Professional Liability Insurance Policy, issued by Imperial Casualty & Indemnity Company. The policy provided $1,000,000 in liability coverage with a $50,000 deductible, including costs in providing a defense. Riggs was also insured by a USF & G Homeowner's Insurance Policy. That policy provided $500,000 in liability coverage.
 
 
 6
 Riggs submitted the entire McLane claim to USF & G which undertook the defense of Count One. Imperial undertook the defense of Count Two. Riggs was paying Imperial's defense costs because of the deductible. Consequently, in October 1988, at the insistence of Riggs, USF & G assumed the defense of Count Two in addition to Count One. Imperial withdrew from the defense, although they were given notice and an opportunity to defend the McLane action. In January 1989, USF & G requested that Riggs and Imperial participate in a settlement of the McLane claim. The parties are in dispute regarding whether Imperial stated, at that time, that its coverage was excess. Imperial did not participate in the settlement. Riggs demanded that USF & G settle McLane's claim for any amount up to the $500,000 limit of USF & G's policy. USF & G settled the McLane claim for $400,000 and then filed a contribution action against Imperial in district court. Riggs filed a counterclaim against USF & G. The district court granted summary judgment to Imperial. The court held that Imperial's policy excluded coverage for McLane's claim and that Imperial did not waive its right to invoke the exclusion. USF & G appeals the district court's grant of summary judgment.
 
 DISCUSSION
 1. Jurisdiction
 
 7
 On October 23, 1990, the district court entered an order granting Imperial's motion for summary judgment and denying USF & G's motion for summary judgment. The order did not address the counterclaim Riggs had filed. On January 7, 1991, the district court issued an order dismissing Riggs' counterclaim with prejudice. USF & G filed its notice of appeal on January 16, 1991.
 
 
 8
 When multiple claims are involved the court may direct the entry of a final judgment of fewer than all the claims only upon an express determination that there is "no just reason for delay and upon an express direction for the entry of judgment." Fed.R.Civ.P. 54(b). In the absence of such determination and direction, any order which adjudicates fewer than all the claims shall not terminate the action. Id. The October 23, 1990 order did not address all the claims nor did it contain any language regarding a determination and direction for the entry of judgment. Therefore, the October 23, 1990 order was not final. The January 7, 1991 order finally terminated the action by rendering judgment on the last outstanding claim, Riggs' counterclaim. Thus, USF & G's notice of appeal filed on January 16, 1991, was well within 30 days after the entry of the judgment as required. Fed.R.App.P. 4(a)(1). Therefore, we have jurisdiction.
 
 2. Exclusionary Clause
 
 9
 USF & G argues that the Imperial policy clause which excludes claims arising out of the ownership of property is not applicable to McLane's claim and therefore Imperial is liable for contribution to the claim. We review a grant of summary judgment de novo. Datagate, Inc. v. Hewlett-Packard Co., 941 F.2d 864, 867 (9th Cir.1991), cert. denied, 112 S.Ct. 1667 (1992).
 
 
 10
 Imperial's policy with Riggs states that Imperial will indemnify Riggs for any " '[d]amages' by reason of liability arising out of any negligent act, error, mistake or omission in rendering or failing to render professional services." The policy excludes coverage for "claims or 'costs, charges and expenses' for or arising out of: ... (f) the ownership, rental, leasing, operation, maintenance, use or repair of any real or personal property, including property damage to property owned by, occupied by, rented or leased to the [i]nsured."
 
 
 11
 The traditional rule of contract interpretation states that when a court finds a clause to be clear and unambiguous, the court will construe the clause "according to its ordinary meaning." State Farm Mut. Auto. Ins. Co. v. Wilson, 782 P.2d 727, 733 (Ariz.1989). On the other hand, where a court finds ambiguity in an insurance clause, the policy will be construed against the insurer. Security Ins. Co. of Hartford v. Andersen, 763 P.2d 246, 248 (Ariz.1988). This is especially true where ambiguity involves an exclusionary clause. Id.
 
 
 12
 In the instant case, McLane filed two claims, one based on Riggs' duty as a homeowner, the other based on his alleged negligence in performing architectural services. There is no dispute over USF & G's liability for the first claim. The issue is whether there is joint liability or in the alternative whether Imperial's policy unambiguously excludes liability for the second claim. Imperial argues that the clause is clear and that the only sensible reading of the exclusion is that it obviates any liability on its part. It contends that the clause excludes liability for actions arising out of negligent services rendered if the insured owns the property. We believe, however, that there is another equally or more plausible interpretation of the clause.
 
 
 13
 Imperial's policy excludes coverage of a claim "arising out of" ownership of property by the insured. If McLane's claim arises out of Riggs' ownership of the structure it would fall under the policy exclusion. On the other hand, if it could be construed as not "arising out of" Riggs' ownership, it would not fall under the policy exclusion and thus would be covered by the policy.
 
 
 14
 In American Modern Home Ins. Co. v. Rocha, 729 P.2d 949 (Ariz.Ct.App.1986), the court had occasion to construe an analogous exclusion in the defendant's homeowner policy for injury "arising out of the ownership, maintenance, operation, use, loading or unloading of: Any motor vehicle owned ... by ... any insured...." Rocha was injured when a tripod collapsed as it was pulled by a vehicle owned by Page, the defendant's insured. The injury occurred on Page's property and was covered by his homeowner's policy if the exclusion was inapplicable.
 
 
 15
 The defendant insurance company argued that any connection between the automobile and the accident invokes the exclusion. The court rejected this argument, stating: "Arizona courts have consistently looked for ... a causal connection when invoking similar exclusions in homeowner policies." Rocha, 729 P.2d at 951. Quoting from Vanguard Ins. Co. v. Cantrell, 503 P.2d 962 (Ariz.Ct.App.1972), the court stated: " '[C]ourts construing the 'arising out of' clause have held the words are '... broad, general and comprehensive terms effecting broad coverage ...' but that the words do import a concept of causation." Id.
 
 
 16
 Moreover, the Rocha court explained that "[i]t is hornbook law that exclusionary clauses are subject to more strict construction than are covered provisions." Id at 952. The court referred to yet another Arizona case, Brenner v. Aetna Ins. Co., 445 P.2d 474 (Ariz.Ct.App.1968), which held: "That the situs of the accident was in fact within a motor vehicle and the fact that both the tort-feasor and the injured party were both 'using' the car at the time does not make the injury one 'arising out of ... use' of the vehicle.' " Rocha, at 951.
 
 
 17
 Similarly, the fact that both Riggs and McClean were in Riggs' home when the injury occurred does not make the injury one "arising out of" Riggs' ownership of the house. Here, there was an insufficient causal connection between the injury and Riggs' ownership of the house to warrant invocation of the strict terms of the exclusion. Ownership was largely irrelevant, because McLane could have brought her negligent design claim against Riggs regardless of whether Riggs owned the premises. Thus, under the Arizona courts' interpretation, the claim for negligent architectural services does not "arise out of" Riggs' ownership of the structure where the accident occurred.
 
 
 18
 Moreover, it would have been easy for Imperial to exclude coverage for injuries occurring on the insured's premises by expressly stating that in the exclusionary clause. As the clause is currently written, the language "arising out of ownership" presents a causal problem that, at best, makes the clause ambiguous. Assuming that the clause is ambiguous, the traditional rule of construing ambiguous insurance provisions against the insurer mandates that the policy be construed in favor of Riggs. See Security Ins. Co. of Hartford, 763 P.2d at 248. Consequently, Imperial would be liable for McLane's claim.
 
 3. Contribution
 
 19
 USF & G argues that it is entitled to contribution from Imperial, including prejudgment interest. "[W]here two companies insure the same risk and one is compelled to pay the loss, it is entitled to contribution from the other." Universal Underwriters Ins. Co. v. Dairyland Mut. Ins. Co., 433 P.2d 966, 968 (Ariz.1967), overruled on other grounds, Hartford Accident & Indem, Co. v. Aetna Casualty & Sur. Co., 792 P.2d 749, 754-56 (Ariz.1990) (in banc). In order for there to be contribution, however, "the interest, as well as the risk and subject matter, must be identical." Granite State Ins. Co. v. Employers Mut. Ins. Co., 609 P.2d 90, 93 (Ariz.Ct.App.1980) (quoting Continental Casualty Co. v. Signal Ins. Co., 580 P.2d 372, 374 (Ariz.Ct.App.1978). A four-part test has evolved which must be satisfied before contribution is required. Both policies must cover: (1) the same parties, (2) the same interest, and (3) the same property, (4) against the same casualty. Id. In this case, both policies cover Riggs. Both policies cover the same interest because they entitle Riggs to indemnification upon the occurrence of the accident. See id. at 93-95. Both cover an injury occurring on the same property, and finally, both policies insure against the same casualty, bodily injury. Thus, USF & G has satisfied the four-part test for contribution and is entitled to contribution from Imperial to the extent, if any, that Riggs' architectural negligence caused McLane's injury.
 
 CONCLUSION
 
 20
 We find that Imperial's policy provides coverage for McLane's injury and the exclusion does not apply. Therefore, we REVERSE the district court's grant of summary judgment to Imperial. We remand for a determination of Riggs' negligence in his capacity as an architect and, if necessary, for determination of a proper allocation of Riggs' liability between McLane's two causes of action. The question of prejudgment interest will await determination of the allocation issue. REVERSED and REMANDED.
 
 BEEZER, Circuit Judge, dissenting:
 
 21
 In Arizona a written insurance policy provides evidence of the contract between insurer and insured. Darner Motor Sales v. Universal Underwriters Ins. Co., 140 Ariz. 383, 682 P.2d 388, 392-99 (1984) (adopting Restatement (Second) of Contracts § 211). Although the parties do not mutually assent to boilerplate terms, a court must follow their plain meaning unless the insured would not have assented to the contract with the disputed term in it. State Farm Fire & Casualty Co. v. Powers, 163 Ariz. 213, 786 P.2d 1064, 1067 (Ct.App.1989).
 
 
 22
 Imperial's policy language unambiguously excludes claims "for or arising out of ... the ownership ... of any real ... property." The whole purpose of an exclusion is to exclude claims otherwise covered by the terms of the policy. There would have been no occasion for McLane's visit and injury but for Riggs' real property ownership. A court may not invent an ambiguity where none exists. Security Ins. Co. v. Andersen, 158 Ariz. 426, 763 P.2d 246, 248 (1988). Riggs would not have rejected the professional liability policy had he known that it would not cover an accident that occurred in his residence. Powers, 786 P.2d at 1067. He had a homeowner's policy to cover such an accident. I would affirm the district court's summary judgment.
 
 
 23
 I respectfully dissent.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3