503 P.2d 962

**VANGUARD INSURANCE COMPANY,**
Appellant,

v.

**Michael M. CANTRELL and Barbara M.
Cantrell, husband and wife, Appellees.**

**Michael M. CANTRELL and Barbara M.
Cantrell, husband and wife, Appel-
lants and Cross-Appellees,**

v.

**ALLSTATE INSURANCE COMPANY,**
Appellee and Cross-Appellant.

No. 2 CA–CIV 1264.

Court of Appeals of Arizona,
Division 2.

Dec. 12, 1972.

Rehearing Denied Jan. 10, 1973.

Review Granted Feb. 20, 1973.

Lesher & Scruggs, P.C. by D. Thompson Slutes, Tucson, for appellant.

Healy & Beal, P.C. by Robert L. Beal, Tucson, for appellees.

Estes & Zlaket, by Thomas A. Zlaket, Tucson, for Allstate Ins. Co.

HOWARD, Judge.

This appeal seeks review of two judgments entered in garnishment proceedings, consolidated for trial. Vanguard challenges a judgment in the amount of $25,000, the face amount of its insurance policy, in favor

of the Cantrells. The second judgment, in favor of Allstate and against the Cantrells, is challenged by the Cantrells.

Basically, the question is whether Vanguard's homeowners policy or Allstate's automobile liability policy covers injuries sustained by Mr. Cantrell as a consequence of certain conduct on the part of both companies' insured, Browning. (We shall hereinafter refer to the parties as Vanguard, Allstate, Cantrell and Browning.)

Briefly, the facts are as follows: On November 12, 1969, Browning, armed with a gun, drove up to the drive-in window of Oxford Plaza Liquor and demanded that Cantrell give him all the money in the store. Cantrell complied and then ran toward the back of the store. Browning called to Cantrell to come back to the window, and a short time later, Cantrell reappeared at the window. Browning then started to drive away and as he did so, he fired a shot with the pistol over his left shoulder in the general direction of Cantrell. According to Browning, he fired the shot to scare Cantrell and make him duck so that he would not recognize either Browning or his vehicle as it left the scene. The shot hit Cantrell in the left eye causing serious physical impairment.

Cantrell sued Browning for personal injuries and recovered a judgment in the sum of $55,000. He then filed garnishment actions against two of Browning's insurance carriers, Vanguard and Allstate. The former had issued a homeowners policy to Browning with limits of $25,000 and the latter had issued an automobile liability policy to Browning with limits of $100,000. Both companies denied coverage, relying on specific exclusion provisions of their respective policies. Both insurance carriers claimed that Browning's act was intentional and therefore not covered. Vanguard maintained that Browning's act arose out of the operation, maintenance or use of an automobile and therefore was excluded from coverage under its policy. Allstate, on the other hand, denied coverage on the grounds that the act did not arise out of the operation, maintenance or use of Browning's vehicle. The Vanguard policy provided, in part:

"This Company agrees to pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury or property damage, to which this insurance applies, caused by an occurrence. . . ."

The policy excluded:

"a. . . . bodily injury or property damage arising out of the ownership, maintenance, operation, use, loading or unloading of: . . . any motor vehicle owned or operated by, or rented or loaned to any Insured; . . ."

And also,

"f. . . . bodily injury or property damage which is either expected or intended from the standpoint of the Insured."

The Allstate policy provided:

"Allstate will pay for an insured all damages which the insured shall be legally obligated to pay because of:

A. bodily injury sustained by any person, and

B. injury to or destruction of property,

arising out of the ownership, maintenance or use, including loading and unloading, of the owned automobile or a non-owned automobile."

It excluded:

"6. bodily injury or property damage caused intentionally by, or at the direction of, the insured: . . ."

The trial court ruled that the intentional injury exclusion did not apply because (1) Browning did not intend the injury to Cantrell although he might have intended the act of shooting, and (2) he had insufficient mental capacity to form an intent at the time of the act because of an overriding mental illness. The court further found that the act in question did not arise out of the operation, maintenance or use of an

automobile. It therefore concluded that Cantrell's injury was covered by the Vanguard policy but not by the Allstate policy.

## DID THE INJURIES ARISE OUT OF THE OWNERSHIP, MAINTENANCE, USE, LOADING OR UNLOADING OF BROWN'S VEHICLE?

■ In the case of Brenner v. Aetna Insurance Company, 8 Ariz.App. 272, 445 P.2d 474 (1968), we were confronted with an interpretation of a like provision, one in a homeowners policy and the other in an automobile liability policy. A declaratory judgment action was brought to determine whether either of the two insurance companies involved had a duty to defend an action arising out of the accidental shooting of a passenger in an automobile. We pointed out that courts construing the "arising out of" clause have held that the words are " * * * broad, general, and comprehensive terms effecting broad coverage * * *" but that the words do import a concept of causation. *See also*, Annot. 89 A.L.R.2d 150 (1963); 12 Couch on Insurance 2d § 45:56 (1964).

We expressed our approval of the rationale of Mason v. Celina Mutual Insurance Co., 161 Colo. 442, 423 P.2d 24 (1967) and the principle enunciated therein that the accident must have arisen out of the inherent nature of the automobile, as such. The Arizona Supreme Court in Mazon v. Farmers Insurance Exchange, 107 Ariz. 601, 491 P.2d 455 (1971) reiterated the requirement of a causal nexus between an accident or injury and "the ownership, maintenance or use" of a vehicle.

■■ We are of the opinion that the facts presented here justify the trial court's finding that the injury sustained by Cantrell did not arise out of the ownership, maintenance, or use of the Browning vehicle. As we stated in *Brenner*, supra:

"From the standpoint of causation, this injury could have occurred in the woods, in a hunting lodge, or in a house. That the situs of the accident was in fact within a motor vehicle and the fact that both the tort-feasor and the injured party were 'using' the car at the time does not make the injury one 'arising out of the * * * use' of the vehicle. Nor did the injury result from any incident of 'ownership' of the vehicle." 8 Ariz.App. at 276, 445 P.2d at 478.

The trial court was therefore correct in ruling that Cantrell's injury was not covered by the Allstate policy and was not within the purview of the Vanguard exclusionary clause concerning ownership, maintenance or use of a vehicle.

## IS COVERAGE EXCLUDED UNDER THE "INTENTIONAL INJURY" CLAUSE OF THE VANGUARD POLICY?

■ Having resolved the coverage issue in Allstate's favor, we need address ourselves only to the "intentional injury" exclusion of the Vanguard policy. As noted above, the Vanguard policy excluded coverage for injuries expected or intended from the standpoint of the insured. Vanguard's position is that since Browning's act of shooting the pistol was intentional, the exclusion provision came into play. However, the very language of the insurance contract says otherwise—it refers to expected or intended *injury*.

The trial court expressly found that Browning had not intended to harm Cantrell. Since there is evidentiary support for such finding, we accept it as true. Other courts which have considered an "intentional injury" exclusion clause have held that the insurer will not be relieved of its obligations unless the insured had acted with the specific intent to cause harm to the injured person. Lumbermens Mutual Insurance Company, Mansfield, Ohio v. Blackburn, 477 P.2d 62 (Okl.1970); City of Burns v. Northwestern Mutual Insurance Co., 248 Or. 364, 434 P.2d 465 (1967); Smith v. Moran, 61 Ill.App.2d 157, 209 N.E.2d 18 (1965); Putman v. Zeluff, 372 Mich. 553, 127 N.W.2d 374 (1964); Crull v. Gleb, 382

S.W.2d 17 (Mo.App.1964); Baldinger v. Consolidated Mutual Insurance Co., 15 A.D.2d 526, 222 N.Y.S.2d 736, affmd. 11 N.Y.2d 1026, 230 N.Y.S.2d 25, 183 N.E.2d 908 (1962); Alm v. Hartford Fire Insurance Company, 369 P.2d 216 (Wyo.1962).

Vanguard argued, however, that a person intends the ordinary consequences of his voluntary action. Therefore, it contends that harm to Cantrell was intended by Browning. Concededly, such a presumption is used in determining responsibility for the consequences of a voluntary act, but has no application to the interpretation of terms used in insurance contracts. City of Burns v. Northwestern Mutual Insurance Co., supra; Lumbermens Mutual Insurance Company, Mansfield, Ohio v. Blackburn, supra. It is true that an act may be so certain to cause a particular kind of harm that it can be said that a person who performed such an act intended the harm. The same is true of expected harm. The term "expected" has been judicially construed to mean a high degree of certainty. Aetna Casualty & Surety Company v. Martin Brothers Container & Timber Products Corp., 256 F.Supp. 145 (D.C.Or.1966). According to Browning, who was apparently believed by the trial court, he had no intention of harming Cantrell but merely fired the pistol in order to frighten him.[1] If he did not intend the resulting harm, it certainly was not expected "from the standpoint of the insured." Since the exclusionary clause did not clearly express an intention to exclude liability for unintentional or unexpected injury resulting from a deliberate act of the insured, we decline to hold that the mere doing of an intentional act by the insured relieved the insurer of liability.

Vanguard had the burden of showing that the subject loss was within a policy exclusion. Pacific Indemnity Company v. Kohlhase, 9 Ariz.App. 595, 455 P.2d 277 (1969). Having failed to demonstrate that Browning intended the injury to Cantrell, it failed to meet its burden. The trial court correctly

ruled that there was coverage under Vanguard's homeowners policy.

For the foregoing reasons we affirm the judgment in favor of the Cantrells against Vanguard and the judgment in favor of Allstate against the Cantrells.

HERBERT F. KRUCKER, C. J., and HATHAWAY, J., concur.

---

1. There was also medical evidence to support the trial court's finding that Browning lacked mental capacity to form the requisite intent.