Susan **ANDERSON**, as Guardian Ad Litem for Kayla Anderson, **Plaintiffs**

v.

**NITIN ENTERPRISES, INC., d/b/a Dunkin Donuts, Defendant.**

**Civil Action No. 08C–12–138–JOH.**

Superior Court of Delaware, New Castle County.

Submitted: Feb. 19, 2010.

Decided: March 4, 2010.

---

**29.** *See* note 7 *supra.*

**30.** In fact, the Superior Court entered the Final Award of Compensation Order at Key's request.

Bruce L. Hudson, Esquire, of the Law Offices of Bruce L. Hudson, Wilmington, Delaware, attorney for plaintiffs.

Melissa L. Rhoades, Esquire, of Tighe & Cottrell, P.A., Wilmington, Delaware, attorney for the defendant.

## OPINION

HERLIHY, Judge.

This personal injury case is scheduled for trial March 15th. A pre-trial conference was held on February 18th. Shortly

before the pre-trial conference, the defendant has filed two motions in limine. They are to: (1) preclude introduction of the first $15,000 of plaintiffs' damages under Delaware's no-fault law as the injured plaintiff's injuries arose out of the use of a vehicle and (2) preclude introduction of a DVD taken several years after the incident at issue. In the pre-trial stipulation, the plaintiffs proposed to amend their cause of action to include a claim for inadequate training and/or supervision. Defendant offered a verbal objection to the proposed amendment, and the Court heard extensive oral argument on all three motions.

### Factual Background

On October 30, 2007, Kenneth Anderson drove up to defendant Dunkin' Donuts[1] take-out window at an establishment in Middletown. The facts are a little unclear. Kenneth Anderson ordered five hot chocolates.[2] Members of the family were in the vehicle with him. An employee of Dunkin' Donuts handed Kenneth Anderson a carrier with five cups in it. He handed it to his seven year-old daughter, Kayla, to hold until they got home. She placed it in her lap. As her father started to pull away from the take-out window, one of the cups spilled as apparently its lid was not secured. The hot chocolate spilled in Kayla's lap, burning her.

### Motion to Preclude Damages

#### A

Defendant moves to preclude the first $15,000 of plaintiff's claim for medical expenses. Their argument is premised on Kenneth Anderson's PIP insurance, and that Kayla's injury arose out of his use of the motor vehicle. Under Delaware law, Defendant notes, where such coverage exists for an injury arising out of the use of a motor vehicle, the first $15,000 in medical expenses (and/or lost wages) cannot be introduced into evidence. This, defendant asserts, means plaintiffs' "boardable" damage claim is "diminished" by $15,000.

#### B

Plaintiffs response is that Kayla's injuries did not arise out of Kenneth Anderson's use of his motor vehicle. They refer to a Supreme Court opinion establishing three tests for courts to employ to determine if the injury arose out of the use of a motor vehicle. The circumstances of this case, they contend, do not satisfy those tests resulting in a determination that the $15,000 bar does not apply and plaintiffs can introduce all of Kayla's medical expenses.

#### C

Kenneth Anderson's PIP policy provides coverage for him and certain others when injured as a result of the use of his vehicle. Kayla is one of those covered persons. His policy meets the requirements of Delaware law requiring every owner of a motor vehicle to be registered in Delaware to have certain minimum coverage for bodily injury, death, or property damage in the amount of $15,000 for any one person arising out of the ownership, maintenance or use of a motor vehicle.[3] When such coverage exists, the first $15,000 in medical

---

1. This particular Dunkin' Donuts franchise is owned and operated by defendant, Nitten Enterprises, Inc. Throughout this opinion, all reference to Nitten Enterprises, Inc., doing business as Dunkin' Donuts will simply be "Dunkin' Donuts."

2. Plaintiffs allege the tray was designed to hold four cups. Complaint at ¶5; Defendant's responses to interrogatories indicate the tray was designed to hold five cups. Defendant's answers to interrogatories, ¶ 35, 36.

3. 21 *Del. C.* § 2118(a).

expenses (and/or lost wages) is precluded from being introduced into evidence.[4]

The issue in this case boils down to whether Kayla's injury arose out of the use of her father's motor vehicle. The Delaware Supreme Court in *Nationwide General Insurance Co. v. Royal*[5] established a three-part test employed to determine if the injury arose out of the use of a motor vehicle, adopting tests from the Minnesota Supreme Court:

> The Minnesota Supreme Court adopted a three-part test to determine the availability of coverage in a car-to-car shooting. In *Continental Western Insurance Co. v. Klug*, the court analyzed: (1) whether the vehicle was an "active accessory" in causing the injury—i.e., "something less than proximate cause in the tort sense and something more than the vehicle being the mere situs of the injury;" (2) whether there was an act of independence significance that broke the causal link between use of the vehicle and the injuries inflicted; and (3) whether the vehicle was used for transportation purposes. The *Klug* approach provides a flexible framework that takes into account the circumstances of the injury and promotes the legislative purpose of Delaware's underinsured motorist statute—the "protection of innocent persons from the negligence of unknown or impecunious tortfeasors." For this reason, we adopt *Klug's* three-part test as the standard by which the courts of this State should determine whether an injury has arisen out of the operation, use or maintenance of a motor vehicle.[6]

The Delaware Supreme Court recognized that the resolution of the "use" issue is "highly fact specific."[7] This Court has to observe, of course, that the *Royal* three-part test makes a judge, not a jury, a fact finder on this issue. Fortunately, in this case, as in *Royal,* the basic facts are not disputed.

Going in reverse order, no one disputes that the third test in *Royal* is met, whether the vehicle here was used for transportation purposes. Kenneth Anderson drove up to Dunkin' Donuts' take-out window, neither he nor anyone else in the vehicle got out, and he drove off after getting the hot chocolate and doughnuts.

Neither side disputes that the second *Royal* test is satisfied. Neither side argues there was an act of "independent significance" that broke the causal link between the vehicle's use and Kayla's injuries. Each side is arguably in a conundrum. On this test, the defendant does not claim such an act occurred. At trial, however, they will assert that Kenneth Anderson's own negligence, in failing to insure the lids were tight before passing the tray to Kayla and not telling her to be extra careful, was greater than its alleged negligence. On the plaintiffs' side, they do not agree Kenneth Anderson was negligent, or, at least, that his actions operated to create an act of independent significance.

There is no Delaware case law to help with this answer to this question. But here there is a key fact which suggests a negative answer. To drive safely away from the take-out window, Kenneth Anderson had to pass the tray with five cups of hot chocolate to someone else.

In *Buckingham v. State Farm Mutual Automobile Insurance Co.,*[8] this Court had

---

4. 21 *Del. C.* § 2118(h).

5. 700 A.2d 130 (Del.1997).

6. *Id.* at 132. (Citations omitted).

7. *Id.* at 133, citing *Cont'l W. Ins. Co. v. Klug,* 415 N.W.2d 876, 877–78 (Minn.1987).

8. 2006 WL 3393586 (Del.Super.).

a "road rage" case. The incident occurred at a traffic light and a little later the "offended" party got out of his car and assaulted the insured in his car. This Court held the vehicle was an "active accessory" to the cause of the injury. It also found that it was not an act of "independent significance" for the other driver to get out of his car and then assault the insured. This Court ruled the sequence of events was unbroken, the assailant was only briefly out of his car, and the events were continuous. This meant the second test was met.[9]

On appeal, this Supreme Court upheld this Court's finding that the vehicle in which the plaintiff insured was riding was an "active accessory" to the injury.[10] The Court said the insured's actions in how he handled his car provoked the rage. But the Supreme Court reversed this Court's finding on independent significance. The assailant getting out of his car was such an act, meaning *Royal's* second test was not met.[11]

 Here, however, the sequence of events was unbroken. The injury occurred in the vehicle as it was in motion. Kenneth Anderson's passing of the tray to Kayla was not an act of independent significance but part of the trip to get hot chocolate with the family and to be able to drive safely by not holding a tray.

The Court has no trouble in finding the events here satisfy *Royal's* first test, whether the vehicle was "an active accessory" in causing the injury. The vehicle was the means to get to the Dunkin' Donuts. No one got out of it. Rather than going inside to get the hot chocolate, the take-out window was used. To drive safe-ly, Kenneth Anderson had to hand the tray to someone else. The vehicle was in motion when the hot chocolate spilled. All of this shows that the vehicle was more than the mere "situs" of the injury and that its forward motion was a cause of Kayla's injury.

In this day-in-age, injuries like this are foreseeable. This Court in *Buckingham* correctly noted that the first *Royal* test has an element of foreseeability.[12] Take-out windows are a fact-of-life at many fast food establishments. Many serve hot chocolate and coffee or other hot beverages from them. The element of foreseeability is here self-evident.

Consequently, this Court holds Kayla's injuries arose out of the use of her father's motor vehicle. It is an insured risk under his policy which he has as mandated by Delaware law. That law, 21 *Del. C.* § 2118(h), therefore, precludes the admission into evidence of the first $15,000.00 of Kayla's medical expenses.

### Motion to Exclude DVDs

#### A

· The defendant has moved to exclude one of two DVDs. One shows portions of the events on October 30, 2007, and its admissibility is not contested. The other DVD shows unrelated events during a site visit by counsel on August 6, 2009. The defendant supplied DVDs on February 26th which, at the Court's request, are compatible with the Court's DVD players.

#### B

The record surrounding the events is partly unclear and at one point seemingly contradictory. The contradictory part was

---

9. *Id.* at *4.

10. *State Farm Automobile Ins. Co. v. Buckingham*, 919 A.2d, 1111, 1114 (Del.2007).

11. *Id.* at 1116–1117.

12. *Buckingham*, 2006 WL 3393586, at *3.

noted section of this opinion covering the damage issue.[13] It is whether the tray with the cups of hot chocolate which the employee handed to Kenneth Anderson was one designed to securely hold four cups or five.

There are three segments to the October 30th DVD. The first is from a camera outside the establishment, probably located somewhere over the take-out window. It first shows the back end of a vehicle at the window and the headlights of the Anderson vehicle waiting. When the first vehicle leaves, Kenneth Anderson drives his pick-up truck to the window. Based on what else is in the record at this point, it appears Kayla is visible sitting next to him. The truck is there a while. But what is not well displayed is the passing of whatever was purchased to Kenneth Anderson.

The second segment of the October 30th DVD is taken from a camera inside the take-out window area looking toward that window. It shows the window, the employee, some equipment and a little of the floor area just inside the window. The scene depicted, the Court has been led to believe, is of the transaction leading to the events in this case.

Who or what is outside the take-out window is not discernable. To the left of the window is a stack of four cup trays. The employee is shown handing out the window, presumably to Kenneth Anderson, a tray with five cups on it.

The next segment on the DVD is from a camera similarly located outside the window as the earlier camera. But its point of view is the Anderson truck moving away from the window. That is all that appears.

The August 6, 2009, DVD is apparently taken in the normal course of business by the store's surveillance camera. On that date, counsel for the parties paid a site visit to the establishment. The DVD shows nothing about the take-out window. Its point of view is from behind the inside counter, with employees' backs to the camera and waiting on customers. In part of the scene shown, there is a coffee machine, and customers ordering coffee, among other things. As far as the Court can tell, the act of affixing lids to the coffee cup is obstructed by the employees' bodies. There may be an incident depicted where an employee tries to affix a lid to a cup of coffee but disregards two before succeeding with a third. The owner/manager of this Dunkin' Donuts, Bob Patel, was asked at his deposition about the employee discarding the first two lids. He offered only speculative reasons as he did know why the lids were discarded.

### C

The defendant argues that the 2009 DVD is irrelevant. This is particularly so, they contend because, while the DVD may show two lids discarded, there is no reason known for it or the relationship to the hot chocolate incident. Whatever relevance that has it outweighed, they contend, by the risk of undue or unfair confusion or the jury being misled.

### D

Plaintiffs counter by noting that the hot chocolate machine is out of view in the October 30th DVD of their transaction. Also out of view is the employee placing the lids on the cups served to the Andersons. For these reasons, they contend, what was observed in August 2009 is relevant. They assert the scene depicted two and half years later shows the proper

13. *Supra* p. 1.

procedure for a affixing a lid securely to a cup of a hot beverage.

Plaintiffs' argument about the admissibility of the 2009 events relates more to their proposed addition of a claim of negligent training. Presumably, they note, all Dunkin' Donuts' employees receive the same training about the handling of hot beverages and how, especially, to secure lids and make sure they are securely fastened.

### E

■ The Court acknowledges that the DVD of the October 2007 incident at issue here shows neither the hot chocolate machine, the pouring into the cups of the hot chocolate nor the fastening of any of the five lids to the cups handed to Kenneth Anderson. That, in the Court's opinion does not make the August 2009 scene relevant.

In Bob Patel's deposition, he only offers speculative reasons for the employee's discard of the first two lids. In the Court's view, it is not clear the employee shown in 2009 had the same training as the employee who served the Andersons in 2007. Nor, at the moment, is it known what training that latter employee had, and if he did when and/or what.

There is another wrinkle, as the Court sees it, based on the record before it at this stage. The 2007 DVD shows what appears to be a tray designed to hold four cups being used to hand over five cups to Kenneth Anderson. At the moment, the Court is unaware whether it was the lid on that fifth cup which was allegedly not securely fastened or one of the four in slots which was allegedly not fastened. And the record does not show whether it was because the fifth cup was not in one of the pre-designed four slots that it spilled. The 2009 DVD does not show the use of a four cup and certainly five cups of coffee being handed over in a tray allegedly designed to hold four.

Whatever the relevance is of the 2009 DVD, and the Court in the context of the current record and motion is not saying it is or is not relevant, that relevance is outweighed by the substantial risk of confusion. Curiously, Anderson ordered five hot chocolates. There is a stack of trays sitting on the counter next to the window designed to hold four cups. Why not use a holder for four cups and hand over the fifth cup individually? The answer to that question may never be known.

Plaintiffs' primary reason for seeking introduction of the August 2009 DVD is related to their belated inadequate training claim. Based on what the plaintiffs elect,[14] so may go the admissibility of the 2009 DVD. If plaintiffs elect to go to trial on March 15th and not pursue their training claim, the 2009 DVD is inadmissible. If they elect to pursue it, however, thereby necessitating the trial continuance, the Court will revisit the admissibility issue based on the additional record.

### Defendant's Objection to Adding Negligence Claim Regarding Training

#### A

As noted above, the plaintiffs sought in the pre-trial stipulation to add a new cause of action. It is for negligent training and/or supervision of the employee who filled the hot chocolate order and handed the tray to Kenneth Anderson.

#### B

Plaintiffs argue the Court should allow this additional cause of action because it

---

14. See *infra* p. 6.

became evident from the Bob Patel's deposition, taken only in December, that there is a potential cause of action for this. Prior to that deposition, there was no basis for this claim, they assert. Bob Patel's testimony indicated the particular employee had no training at the Dunkin' Donuts where this incident happened, that Patel is less than familiar with what training is made known to the employees, particularly when handling hot beverages, and what training this employee had at a prior Dunkin' Donuts establishment.

## C

The defendant's objections are several-fold. First, the employee in question no longer works there and his whereabouts are unknown. Second, the manager knew the employee had worked at Dunkin' Donuts in New York doing the same job. But their fundamental objection to this cause of action is that it was not pled in the original complaint, and now comes on the eve of trial, and is too late. Should the Court allow plaintiffs to add this new cause of action, they want the trial to be continued. They would want time to find out exactly where this employee worked before, for how long, and what he did. They would want time, also, to find out what prior training this employee may have had.[15]

## D

Resolution of this issue is not clear-cut. Part of the reason is that plaintiffs' current counsel is not their original counsel. The complaint was filed December 15, 2008. The Court issued a scheduling order on January 23, 2009, setting a discovery cut-off of June 5, 2009. Plaintiffs filed interrogatories on February 3rd. Plaintiffs original counsel set up Bob Patel's deposition for April 17, 2009. On April 14th that deposition was cancelled. On April 17th, the defendant answered plaintiffs' interrogatories. Discovery issues remained, and plaintiffs' scheduled several times in May a motion to compel defendant to respond to their discovery requests.

Plaintiffs were deposed on May 18, 2009. On May 21, 2009, plaintiffs' current counsel was substituted for their original counsel. On July 20th, the Court, at plaintiffs' new counsel's request entered a new scheduling order extending the discovery deadline to September 5, 2009. In September, the parties wanted an extension of deadlines to provide time to mediate. On November 5th, Bob Patel's deposition was noticed for December 8th, and it was taken on that date.

His deposition testimony revealed several key things, one of which became known to the Court at the pretrial conference. It is that the employee, also named Patel, but not related, who handed the hot chocolates to Kenneth Anderson is no longer employed at Dunkin' Donuts. He worked there only a month or so in 2007. His whereabouts are unknown. He had been employed at Dunkin' Donuts in New York. Bob Patel did not separately train him regarding filling, covering, or serving hot beverages. He *assumed* Patel had been trained at his prior job in New York, since he apparently did the same kind of work.

Dunkin' Donuts supplies DVDs or online training and maybe some written instructions for the serving and handling of hot drinks, such as coffee and hot chocolate.

15. At the pre-trial conference the Court asked the parties for a copy of owner/manager's deposition and the answers to plaintiffs interrogatories. The defendant did that but with additional argument which the Court did not ask for and to which the plaintiffs did not reply. The Court has not considered that additional argument, only that which was made at the pretrial conference.

Plaintiffs' counsel indicated during the deposition that he was learning for the first time of the training DVDs. There are apparently other instructions for the use of a cup holder when it is used for hot beverages.

Another issue or factor which came out of Bob Patel's deposition is that there are two assistant managers in his establishment, one of whom is his wife. However, neither he nor they supervised the take-out window employees and none of the three were present by practice late at night. This incident occurred late at night. From this testimony, plaintiffs have sought to add the lack of supervision claim.

Bob Patel is the majority shareholder in the corporation which owns this particular Dunkin' Donuts franchise, Nitin Enterprises, Inc. He is also the manager. But his answers about training and other procedures were at times vague or lacking any information about the content of the training videos. He spoke of the need, of course, to firmly secure the lids on hot drinks; hot chocolate is served around 180 degrees.

The Court's reading of Bob Patel's deposition and various defense discovery responses is that it was far more informative for plaintiffs than prior defense discovery responses had been on the issues of training and supervision. Concurrently, the cancellation of his deposition for about 8 months, during which plaintiffs counsel changed due to a conflict by counsel, postponed gathering of a lot of valuable information to the eve of trial.

As a general matter, these are claims a plaintiff should be able to pursue. The rub, of course, is that they have become injected late into the case. It is clear that no one is necessarily at fault for that as seen from the recitation of the procedural history earlier.

Under the Court's Rules, an offer to amend pleadings is permissible as part of a pretrial stipulation.[16] Plaintiffs' proposed amendment to their other negligence claims is substantive. The Court just indicated that there is potential merit to it, at least to the degree that plaintiffs should be permitted to pursue it.

There is, in this Court's humble view, no clear-cut standard by which to determine whether a substantive additional cause of action should be permitted four weeks before the trial. Under the facts of the case, the Court declines to utilize the "manifest injustice" standard.[17]

■ This Court views the standard to be a mix of abuse of discretion and fairness. The plaintiffs have a potentially valid claim on the training issue, one they are entitled to present to a jury. On the other hand, the notice to the defendant of this claim comes very late. The employee in question cannot be found. While there is a reasonable basis for Bob Patel to believe this employee was properly trained at his prior Dunkin' Donuts job, the defendant is equally entitled to try to find out what exactly his prior job was, what training—if any—occurred regarding hot beverages, how long he was employed and so forth.

On the short notice plaintiffs have provided for the new cause of action, there is not enough time to seek out that information. And no one at this point knows what, if anything, the defendant would

---

**16.** Super. Ct. Civ. R. 16(d); Form 46.

**17.** See *Wright v. Moore*, 953 A.2d 223 (Del. 2008) where the issue was whether additional

discovery could be undertaken after remand but before the second trial. The Supreme Court said it should be allowed.

learn about those things. Nevertheless, the defendant should be given tie to try.

The Court, therefore, will leave the choice to the plaintiffs. They can withdraw this new proposed cause relating to training and the trial will start on March 15th as scheduled. Should, however, the plaintiffs choose to pursue this particular cause of action, the March 15th trial will be continued and new dates set.

The plaintiffs are to notify the defendant and the Court the choice by March 9, 2010.

## Conclusion

For the reasons stated herein:

1. The defendant's motion *in limine* to preclude the first $15,000 of plaintiffs' damages is **GRANTED.**

2. The defendant's motion *in limine*, with exception noted, to preclude introduction of the August 6, 2009, DVD is **GRANTED.**

3. Plaintiffs' motion to amend their complaint to add a claim for inadequate training/supervision is **GRANTED,** in part, and **DENIED,** in part, and is subject to their election.

**IT IS SO ORDERED.**