**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

| | | |
|---|---|---|
| SILVIA NEGRON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No.: N17C-07-004 EMD |
| | ) | |
| GEICO SECURE INSURANCE | ) | |
| COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Submitted: April 6, 2018
Decided: May 29, 2018

*Upon Defendant Geico Secure Insurance Company's Motion for Summary Judgment,*
***CONDITIONALLY GRANTED AS SET FORTH BELOW.***

*Upon Plaintiff Silvia Negron's Cross-Motion for Summary Judgment,*
***DENIED.***

**DAVIS, J.**

## I. INTRODUCTION

This is a contract action. This civil action relates to an insurance coverage dispute. Plaintiff Silvia I. Negron was driving her mother's car on I-495 northbound. A 2003 Ford Explorer (the "Ford Explorer") approached Ms. Negron from behind. The occupants of the Ford Explorer fired handguns at Ms. Negron striking her and her passenger. Norma Negron, Ms. Negron's mother, had a valid car insurance policy (the "Policy") issued by Defendant Geico Secure Insurance Company ("Geico") on the car at the time of the incident.

Geico denied coverage under the Policy. Ms. Negron filed suit. Geico filed a Motion for Summary Judgment (the "Motion"). Ms. Negron filed a Cross-Motion for Summary Judgment

(the "Cross-Motion"). Geico filed an Opposition to Plaintiff's Cross-Motion for Summary Judgment ("Geico's Opposition").

For the reasons stated below, the Court **GRANTS** the Motion without prejudice to Ms. Negron amending the Complaint, and **DENIES** Cross-Motion.

## II. RELEVANT FACTS

### A.    THE POLICY

The Policy covered the car driven by Ms. Negron on March 8, 2015. The Policy includes Uninsured Motorists ("UIM") Coverage. The Policy defines an uninsured motor vehicle as "a motor vehicle which has no bodily injury and property damage liability bond or insurance policy applicable with liability limits complying with the Financial Responsibility Law of the state in which such auto is principally garaged or registered at the time of the accident." [1] Uninsured motor vehicle "also includes an auto the insurer of which is, or comes insolvent or denies coverage"[2] or "an auto being used without the owner's permission . . ."[3]

Further, the Policy states that Geico will "pay damages for bodily injury and property damage caused by accident which the insured is legally entitled to recover from the owner or operator of an uninsured motor vehicle or hit and run auto arising out of the ownership, maintenance or use of that auto."[4] Bodily injury is "bodily injury, sickness, or disease, including death, sustained by [the insured], [the insured's] relatives or any other person occupying an insured auto with [the insured's] consent."[5]

---

[1] Mot., Ex. D at 15.
[2] *Id.*
[3] *Id.*
[4] Mot., Ex. D at 16.
[5] *Id.*

2

**B.     THE INCIDENT**

On March 8, 2015, Ms. Negron drove a car owned by her mother.[6]  A Ford Explorer approached Ms. Negron from behind.[7]  The unknown occupants of the Ford Explorer fired handguns at Ms. Negron and her passenger.[8]  Ms. Negron's vehicle struck the Ford Explorer's rear driver side.[9]  The Ford Explorer spun off the roadway and got stuck in a ditch.[10]

Ms. Negron "was jolted and torqued as a result" of the sudden impact from the Ford Explorer.[11]  Ms. Negron also suffered gunshot wounds.  Ms. Negron's vehicle exited I-495 onto Route 13.  Detective Mark Ryde of the Delaware State Police and medical personnel responded to the scene.  The medical personnel transported Ms. Negron to Christiana Hospital and treated Ms. Negron for "multiple injuries in association with a gunshot wound to her right and left chest."[12]

Ms. Negron suffered "injuries to her spine, left arm, head, back, lungs, and chest."[13] These injuries included a "severed spinal cord (causing paraplegia), urinary tract infections, post-traumatic stress disorder, chronic pain due to trauma, muscle weakness, intestinal infections, major depressive disorder, other heart block, and esophageal reflux compression."[14]  Dr. Christian Fras prepared a report of Ms. Negron's medical diagnosis.[15]

Ms. Negron sought coverage under the Policy's UIM benefits.  Geico, denied coverage.

---

[6] Compl. ¶ 3.
[7] *Id*; Cross-Mot. at 3.
[8] *Id.*
[9] *Id.*
[10] *Id.*
[11] Mot. at 3.
[12] *Id.*
[13] Compl. ¶ 4.
[14] *Id.* ¶ 5.
[15] Cross-Mot., Ex. C.

## C.    THE LITIGATION

On December 6, 2016, Ms. Negron filed suit against Geico for (1) breach of contract; and (2) breach of the covenant of good faith and fair dealing in the Court of Common Pleas.[16]  The case was removed to this Court.  On December 28, 2016, Detective Ryde sent Ms. Negron's attorney an email with three diagrams by the Crash Reconstruction Unit.  The email also stated that the Ford Explorer is registered to Zuavey Kadafi.[17]

On January 24, 2018, Geico filed the Motion.  Ms. Negron filed the Cross-Motion on February 9, 2018.  On February 21, 2018, Geico filed the Geico's Opposition.  The Court held a hearing (the "Hearing") on the Motion, Cross-Motion, and Geico's Opposition on March 7, 2018.  At the Hearing, Ms. Negron's counsel explained that he had trouble obtaining information about the Ford Explorer's registration.  The Court allowed Ms. Negron to conduct discovery regarding the ownership and potential insurance for the Ford Explorer.  On April 6, 2018, Ms. Negron filed supplemental information (the "Supplemental Exhibits").

Supplemental Exhibit A is a compilation of DMV records for the Ford Explorer. Supplemental Exhibit A includes an Application for Title, Certificate of Title, Delaware Dealer Reassignment, and other related documents.  The Supplemental Exhibits indicate that Mr. Kadafi purchased the Ford Explorer on October 15, 2014.  Supplemental Exhibit B is a printout of insurance information for the Ford Explorer.  Mr. Kadafi obtained insurance on September 25, 2014.  Mr. Kadafi terminated his insurance policy on October 21, 2014.  Supplemental Exhibit C is an email from Detective Ryde.  Detective Ryde searched the Ford Explorer and did not find any insurance card in the vehicle.

---

[16] Compl. ¶ 7-16; Mot. at 1.
[17] Cross-Mot. at 3.

## III. PARTIES' CONTENTIONS

### A. MOTION

Geico seeks summary judgment in its favor. Geico argues that Ms. Negron's injuries were caused by gunshot wounds and were not a direct or proximate result of the vehicle collision. As such, Geico contends that the Policy does not cover Ms. Negron's injuries. In Geico's Opposition, Geico further argues that Ms. Negron knows the identity of the registered owner of the Ford Explorer. Ms. Negron does not state that the Ford Explorer is uninsured or underinsured. As such, Ms. Negron cannot rely upon the uninsured provision of the Policy.

### B. CROSS-MOTION

Ms. Negron argues that she can recover for her injuries although they stemmed from a gunshot wound. Ms. Negron claims she may recover in this instance because the vehicle used was an active accessory to the shooting. As such, Ms. Negron's injuries fall within the Policy.

## IV. STANDARD OF REVIEW

### A. CIVIL RULE 56

The standard of review on a motion for summary judgment is well-settled. The Court's principal function when considering a motion for summary judgment is to examine the record to determine whether genuine issues of material fact exist, "but not to decide such issues."[18] Summary judgment will be granted if, after viewing the record in a light most favorable to a nonmoving party, no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law.[19] If, however, the record reveals that material facts are in dispute, or if the factual record has not been developed thoroughly enough to allow the Court to apply the

---

[18] *Merrill v. Crothall-American Inc.*, 606 A.2d 96, 99-100 (Del. 1992) (internal citations omitted); *Oliver B. Cannon & Sons, Inc. v. Dorr-Oliver, Inc.*, 312 A.2d 322, 325 (Del. Super. 1973).
[19] *Id.*

law to the factual record, then summary judgment will not be granted.[20]  The moving party bears

the initial burden of demonstrating that the undisputed facts support his claims or defenses.[21]  If

the motion is properly supported, then the burden shifts to the non-moving party to demonstrate

that there are material issues of fact for the resolution by the ultimate fact-finder.[22]

## V. DISCUSSION

**A.** **THERE IS A GENUINE ISSUE OF MATERIAL FACT WHETHER THE FORD EXPLORER WAS INSURED AT THE TIME OF THE INCIDENT**

Underinsured motorist insurance coverage must cover injuries "resulting from ownership,

maintenance or use of" an uninsured motor vehicle.[23]  Delaware statutory law ("Section 3902")

defines an uninsured motor vehicle as:

> a. One for which there is no auto liability bond, insurance or other security applicable at the time of the accident in at least the amounts required by the financial responsibility law where the auto is principally garaged or registered;
>
> b. One for which the insuring company denies coverage or becomes insolvent; or
>
> c. A hit-and-run motor vehicle that causes an accident resulting in bodily injury or property damage to property of the insured. Bodily injury or property damage must be caused by physical contact of the hit-and-run vehicle with the insured or with an insured motor vehicle, or by a noncontact vehicle where the identity of *both the driver and the owner of such vehicle are unknown*.  The accident must be reported to the police or property governmental authority.  The insured must notify his or her insurer within 30 days, or as soon as practicable thereafter, that the insured or his or her legal representative has a legal action arising out of the accident.[24]

To fall within subpart (c), the owner and operator of the responsible vehicle must be

unknown to the plaintiff.  As such, a vehicle is not a "hit and run vehicle" when the operator is

---

[20] *See Ebersole v. Lowengrub*, 180 A.2d 467, 470 (Del. 1962); *see also Cook v. City of Harrington*, 1990 WL 35244 at *3 (Del. Super. Feb. 22, 1990) (citing *Ebersole*, 180 A.2d at 467) ("Summary judgment will not be granted under any circumstances when the record indicates . . . that it is desirable to inquire more thoroughly into the facts in order to clarify the application of law to the circumstances.").

[21] *See Moore v. Sizemore*, 405 A.2d 679, 680 (Del. 1970) (citing *Ebersole*, 180 A.2d at 470).

[22] *See Brzoska v. Olsen*, 668 A.2d 1355, 1364 (Del. 1995).

[23] 18 *Del. C.* § 3902(a).

[24] 18 *Del. C.* § 3902(a) (emphasis added).

6

unknown and the owner is known.[25] However, when a plaintiff learns the identity of the owner after the statute of limitations has run, the plaintiff may still recover under the uninsured provision or statute.[26]

The purposes of the hit-and-run provision is to "protect the insured injured by unknown tortfeasors." "[T]he phrase hit-and-run is the commonly accepted description of an incident involving car accident where the driver flees the scene."[27] Where the driver flees without leaving a name, address, vehicle's registration number, or license information, the driver has fled the scene.[28] Even if the plaintiff has a partial license plate and incorrectly identifies the vehicle's owner and operator, that plaintiff should not be penalized for acting in due diligence.[29]

Ms. Negron cannot seek coverage from the uninsured statute under the hit-and-run provision. At the latest, Ms. Negron learned that the Ford Explorer is registered to Mr. Kadafi on December 28, 2016—with more than two months remaining on the statute of limitations. Ms. Negron knew the identity of the registered owner within the statute of limitations. Therefore, Ms. Negron cannot rely on the hit-and-run provision.

However, under the uninsured provision, "the burden of proving that the tortfeasor or party responsible for the injury is not insured, is on the party seeking to recover under the uninsured motorist provision."[30] The plaintiff must show that "she made good faith reasonable efforts to contact [the tortfeasor's] insurance company before filing suit against her own

---

[25] *See Mohl v. Doe*, 1995 WL 339099, at *3 (Del. Super. May 11, 1995).
[26] *See Rodriguez v. Farm Fam. Cas. Ins. Co.*, 2006 WL 1148807, at *2 (Del. Super. Mar. 6, 2006).
[27] *Id.*
[28] *Id.*
[29] *Id.*
[30] *Fauconier v. USAA Cas. Ins. Co.*, 2010 WL 847289, at *2 (Del. Super. Mar. 1, 2010) (quoting *Lum v. Nationwide Mut. Ins. Co.,* 1979 WL 195347, *4 (Del. Super. Dec. 19, 1979)).

7

insurance company."[31] Additionally, if a plaintiff contacts an alleged tortfeasor and can show the Court that the tortfeasor is not insured, then a suit against that person is not necessary before seeking UIM benefits.[32] However, if a factual determination is required to determine whether the plaintiff made reasonable efforts to determine a tortfeasor is uninsured, that determination is not appropriate for summary judgment.[33]

There is a genuine dispute whether Ms. Negron made reasonable efforts to obtain insurance information for the Ford Explorer and thereby may rely on the uninsured provision. Ms. Negron provided evidence after the Hearing that indicated Mr. Kadafi had insurance for less than two months. Mr. Kadafi terminated his insurance policy shortly after passing inspection through the Division of Motor Vehicles. Detective Ryde also searched the Ford Explorer and did not find any insurance information in the Ford Explorer. This appears to indicate that Mr. Kadafi did not have insurance on the Ford Explorer at the time of the incident. This creates a factual question whether Ms. Negron has sufficiently shown that the vehicle was uninsured at the time of the incident.

**B.     THE INJURY AROSE FROM THE OPERATION, USE, OR MAINTENANCE OF THE CAR**

To fall under the uninsured benefits, Ms. Negron's injury must result from the ownership, use, or maintenance of the car. In *Nationwide General Ins. Co. v. Royal*, the Delaware Supreme Court adopted a three-part test to "determine whether an injury has arisen out of the operation, use or maintenance of a motor vehicle."[34] The Court must consider:

---

[31] *Fauconier*, 2010 WL 847289, at *2; *see also DeEmedio v. Nationwide Ins. Co.*, 1987 WL 6452, at *4 (Del. Super. Jan. 22, 1987) (finding plaintiff "contractually bound to exhaust the other options available to her before turning to her own insurance company for uninsured motorist coverage.").

[32] *DeEmedio*, 1987 WL 6452, at *4.

[33] *See Fauconier*, 2010 WL 847289, at *2.

[34] 700 A.2d 130, 132 (Del. 1997).

(1) whether the vehicle was an "active accessory" in causing the injury-*i.e.,* "something less than proximate cause in the tort sense and something more than the vehicle being the mere situs of the injury;"

(2) whether there was an act of independent significance that broke the causal link between use of the vehicle and the injuries inflicted; and

(3) whether the vehicle was used for transportation purposes.[35]

"The purpose of the three-prong test is to provide a flexible framework that takes into the account the circumstances of the injury and promotes the protection of innocent persons from the negligence of unknown impecunious tortfeasors."[36]

A motor vehicle is not an active accessory in causing the injury when it is merely the location of the injury. A vehicle is not an active accessory when a victim is shot in a stationary car by a pedestrian.[37] Additionally, using a vehicle to perform a drive-by shooting of a stationary target is not using the vehicle as an active accessory. In *Nationwide General Ins. Co. v. Royal*, an assailant sought retribution against the plaintiff.[38] The assailant convinced someone else to drive the assailant to the plaintiff's house.[39] The assailant retrieved a rifle and fired from the moving car driven by the defendant.[40] The Court found that the vehicle was not an active accessory to the shooting.[41]

However, the *Royal* court noted that the "vehicle was not an essential or even a significant element in the events that led to [the plaintiff's] injuries."[42] The Court further explained that the assailant "did not use the vehicle in order to catch up with or better position himself to shoot at [the plaintiff]."[43] The Court noted that there are cases "where coverage has

---

[35] *Id.*

[36] *Bryant v. Progressive N. Ins. Co.*, 2008 WL 4140686, at *2 (Del. Super. July 28, 2008) (citing *Royal*, 700 A.2d at 132).

[37] *Sanchez v. Am. Indep. Ins. Co.*, 886 A.2d 1278 (Del. 2005).

[38] 700 A.2d at 132.

[39] *Id.* at 131.

[40] *Id.*

[41] *Id.* at 133.

[42] *Id.* at 132-33.

[43] *Id.* at 133.

been found involve[ing] victims who were injured in car-to-car chases."[44] In those cases, the vehicle was "an essential component of the assault" and "not merely a means of arriving at the scene of the injury."[45]

Under the facts, the Ford Explorer appears to be an essential element of Ms. Negron's injuries. Ms. Negron and her passenger were driving at the time of the injuries. They were struck by the Ford Explorer. Further, the Ford Explorer was necessary for the occupants to continue shooting at Ms. Negron and her passenger because Ms. Negron and her passenger were driving on I-495 at the time of the attack. Moreover, there was no independently significant act that broke the causal link between the car and the injury.[46] Finally, the car and Ford Explorer were both used for transportation purposes.

## C. THE COMPLAINT IMPROPERLY PLEADS THE CAUSE OF ACTION

The Complaint states that "[a]t the time of the accident, the automobile operated by the offending driver left the scene of the accident and, therefore, there is no bodily injury coverage for the claims and damages asserted by plaintiff."[47] The Complaint appears to allege breach of contract based on the hit-and-run provision. The Court must grant the Motion relating to Section 3902(c)—the hit-and-run portion of the statute. However, it is unclear if the Complaint also relates to Section 3902(a) or (b).

Ms. Negron filed the Complaint on December 6, 2016. At the latest, Ms. Negron learned that Mr. Kadafi is the registered owner of the Ford Explorer on December 28, 2016. The Complaint does not indicate that the Ford Explorer was uninsured. Following the Hearing, Ms.

---

[44] *Id.* at 133 n.15. (listing several cases from different jurisdictions where injuries resulting from car-to-car chases were covered under insurance policies).
[45] *Id.* at 133.
[46] *See State Farm Mut. Auto. Ins. Co. v. Buckingham*, 919 A.2d 1111 (Del. 2007) (finding that an assailant exiting his vehicle after a car-on-car chase to punch the plaintiff broke the causal link between the car and the injury).
[47] Compl. ¶ 8.

10

Negron conducted limited discovery relating to potential insurance for the Ford Explorer. Based on this additional information, the Court will grant the Motion *BUT* will grant the Motion without prejudice to allow Ms. Negron to amend the Complaint within ten days to clarify if the Complaint incorporates Section 3902(a) or (b).

## VI. CONCLUSION

For the reasons stated above, the Court **GRANTS** the Motion without prejudice to Ms. Negron amending the Complaint and **DENIES** Cross-Motion. Ms. Negron has ten days to amend the Complaint. If Ms. Negron fails to amend the Complaint or cannot do so, Geico shall notify the Court and the Court will enter judgment in favor of Geico.

**IT IS SO ORDERED**.

Dated: May 29, 2018
Wilmington, Delaware

*/s/ Eric M. Davis*
Eric M. Davis, Judge

11