919 A.2d 1111 (2007)
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY and Nationwide Assurance Company (f/k/a Colonial Insurance Company of Wisconsin), Defendants Below, Appellants,
v.
Richard D. BUCKINGHAM, III, Plaintiff Below, Appellee.
No. 350, 2006.
Supreme Court of Delaware.
Submitted: January 31, 2007.
Decided: February 21, 2007.
*1112 Thomas P. Leff, Casarino, Christman & Shalk, P.A., Wilmington, DE, for appellant State Farm.
Robert J. Leoni, Morgan, Shelsby & Leoni, Stanton, DE, for appellant Nationwide.
Christopher J. Sipe, Christopher J. Sipe, P.A., Newark, DE, for appellee Buckingham.
Before STEELE, Chief Justice, HOLLAND, BERGER, JACOBS and RIDGELY, Justices, constituting the court en banc.
STEELE, Chief Justice:
In this case, an unidentified man got out of his pickup truck and assaulted plaintiff-appellee, Richard D. Buckingham, III, while Buckingham and a passenger were stopped at a traffic light in the passenger's car. Buckingham filed an action in Superior Court against defendant-appellants automobile insurance carriers, State Farm Mutual Insurance Company and Nationwide Assurance Company, seeking uninsured motorist benefits under relevant policies. A Superior Court judge granted Buckingham summary judgment.
State Farm and Nationwide claim on appeal that under their respective insurance policies, the victim of an assault is not eligible for uninsured motorist benefits where the assault does not involve the operation, maintenance or use of the motor vehicle driven by the assailant. Further, they argue that the Superior Court judge incorrectly applied the applicable test for coverage set forth in Continental Ins. Co. v. Klug.[1] We conclude that under the Klug test, where an act of independent significance breaks the causal link between the use of a vehicle and infliction of injury to an insured/claimant, uninsured motorist coverage is not available. In this case, because an unidentified assailant got out of his car and then assaulted Buckingham, the injuries Buckingham suffered from the assault did not arise "out of the ownership, maintenance or use" of the uninsured motor vehicle. Because neither State Farm's nor Nationwide's uninsured motorist policies covers Buckingham, we REVERSE.

FACTS AND PROCEDURAL HISTORY
On February 27, 1999, Buckingham was driving his passenger's 1996 Pontiac Fire-bird on Delaware Route 72 in Newark, Delaware. Buckingham stopped at a traffic light at the intersection of Route 72 and Route 4 at approximately 9 p.m. While Buckingham was stopped at the light, a pickup truck pulled up and stopped a few feet behind Buckingham's vehicle. There was no contact between the two vehicles. Buckingham noticed the interior light turn on inside the truck and then saw a man next to his window. The unidentified man opened Buckingham's door and struck him with a metal object, which Buckingham believed to be a tire iron. During the assault, the man said something about rocks flying up and hitting his truck. Buckingham's passenger got out of the car but retreated when the assailant raised the tire iron towards her. Buckingham and his passenger were unable to obtain the license plate number on the assailant's truck. Buckingham reported the incident to the police, but to no avail.
Buckingham went to the emergency room at Christiana Hospital. He suffered multiple injuries as a result of the attack, including a fractured skull and cheekbone, as well as a detached retina. On July 30, 2003, Buckingham filed an action in Superior *1113 Court against State Farm and Nationwide claiming entitlement to uninsured motorist benefits under policies issued by them.[2] The parties participated in a Rule 16.1[3] arbitration hearing. Buckingham then sought a trial de novo. All parties filed for summary judgment. A Superior Court judge granted Buckingham's motion for summary judgment and denied State Farm and Nationwide's motions. State Farm and Nationwide appealed.

DISCUSSION
State Farm and Nationwide argue that under their respective policies, the victim of an assault is not eligible for uninsured motorist benefits where the assault does not involve the operation, maintenance or use of the motor vehicle driven by the assailant. They argue that the legal litmus test to determine whether an injury has arisen out of the operation, use or maintenance of a motor vehicle can be found in Klug.[4] State Farm and Nationwide maintain that when the Klug three factor test is applied correctly to the facts in this case, their uninsured motorist provisions do not provide coverage to Buckingham.
This Court reviews questions of law and construction of contracts de novo.[5] The sole question presented is whether Buckingham's injuries arise out of the operation, use or maintenance of a motor vehicle under the terms of State Farm and Nationwide's policies. If so, then Nationwide and State Farm's policies would provide coverage for Buckingham's injuries.
In Nationwide General Ins. Co. v. Royal,[6] this Court adopted the three-part test articulated in Klug[7] as "the standard by which the courts of this State should determine whether an injury has arisen out of the operation, use or maintenance of a motor vehicle."[8] The three Klug factors are: (1) whether the vehicle was an "active accessory" in causing the injuryi.e., "something less than proximate cause in the tort sense and something more than the vehicle being the mere situs of the injury;" (2) whether there was an act of independent significance that broke the causal link between the use of the vehicle and the injuries inflicted; and, (3) whether the vehicle was used for transportation purposes.[9] As we stated in Royal, "[t]he *1114 Klug approach provides a flexible framework that takes into the account the circumstances of the injury and promotes the legislative purpose of Delaware's underinsured motorist statutethe `protection of innocent persons from the negligence of unknown (or) impecunious tortfeasors.'"[10]
To be an active accessory under the first prong of Klug, the vehicle must be more than the mere situs of the injury, but can be less than the proximate cause of the injury.[11] Relying on Royal, State Farm and Nationwide contend that this factor is not satisfied because the presence of the assailant's vehicle "was merely fortuitous with respect to the assault."[12] In Royal, a case involving a drive-by shooting, this Court determined that the vehicle was not an active accessory because the assailant's use of the vehicle was fortuitous, since the assailant would have attacked in any event, with or without a vehicle being involved.[13] This court explained that the "vehicle was not an essential or even significant element that led to [the victim's] injuries" and denied Royal coverage under uninsured motorist provisions of her insurance policy.[14]
We find that this case is factually distinguishable from Royal and satisfies the first Klug factor. Here the initial circumstances precipitating the incident arose when Buckingham allegedly provoked the assailant by operating his car in a manner that kicked up rocks that hit the assailant's truck. The assailant, in an apparent fit of road rage, followed Buckingham to the stop light in his truck. Thus, the facts here are distinguishable from Royal, because Buckingham's vehicle was not simply the situs of the attack rather, it was an "active accessory" in the incident provoking the attack that caused Buckingham's injuries.
We also find that the facts of this case satisfy the third Klug factor because the assailant's vehicle transported him to the site of and facilitated the assault on Buckingham. There is, therefore, a causal connection between operation or use of a vehicle and the assault.
Finally, however, we must consider whether the second Klug factor has been satisfied. "If a court finds the requisite degree of causation, it should next determine whether an act of independent significance occurred, breaking the causal link between the `use' of the vehicle and the injuries inflicted."[15] While there is little case law in Delaware addressing this second Klug factor, case law from other jurisdictions is instructive.[16] Courts in other jurisdictions have repeatedly held that a motorist's intentional or criminal act resulting from "road rage" does not arise *1115 "out of the operation, maintenance or use of a vehicle."[17] That result is consistent with the fundamental principle of tort law that an intentional or criminal act, such as a battery, will break a requisite causal chain.[18] For example, in Holm v. Mutual Service Cas. Ins. Co., the Minnesota Supreme Court found an act of independent significance had occurred where a police officer, after pursuing a motorcycle, left his vehicle to make an arrest and committed a battery upon the motorcyclist.[19] After analyzing cases from other jurisdictions, the court arrived at the following conclusion:
acts of leaving the vehicle and inflicting a battery were viewed as events of independent significance which broke the causal link between the `use' of the vehicle and the injuries inflicted. And this was so in spite of the fact that in each instance the subject auto was used to transport the tortfeasor(s) to the scene of the accident.[20]
Similarly, in Wieneke v. Home Mutual Ins. Co., the assailant and plaintiff drove alongside each other yelling insults. Both cars then stopped, and the assailant got out of the car, walked to plaintiff's car, and punched the plaintiff.[21] The court held that an injury to an insured motorist resulting from an assault by another motorist while the plaintiff was seated in his automobile and after both motorists had exchanged heated words at a stoplight over the manner in which each was driving, did not arise out of the "use or maintenance of a motor vehicle." The assailant's acts constituted an event of independent significance which broke the causal link between the use of vehicle and the injuries inflicted.[22]
*1116 We find that the facts in this case do not satisfy the second Klug factor. The assailant here, like those in Holm and Wieneke, got out of his car and assaulted Buckinghaman act of independent significance that broke the causal link between the use of the vehicle and the injuries inflicted. The assailant intentionally and criminally caused the injury, independent of the use or operation of his truck.[23] Therefore, we conclude that the injuries inflicted by the assault did not arise "out of the ownership, maintenance or use" of the uninsured motor vehicle.[24] As we noted in Royal:
[w]e are not unmindful of the settled principle that insurance contracts are liberally construed in favor of finding uninsured/underinsured coverage. Even a liberal reading of the phrase `arising out of the use of a motor vehicle,' however, does not warrant a finding of coverage under the facts of this case . . . `[E]ven liberal construction has its limits.'[25]
Because State Farm and Nationwide's policies do not provide uninsured motorist benefits to Buckingham under these facts, we reverse.

CONCLUSION
For the foregoing reasons, the judgment of the Superior Court is REVERSED.
NOTES
[1] 415 N.W.2d 876 (Minn.1987); see also Nationwide Gen. Ins. Co. v. Royal, 700 A.2d 130 (Del.1997).
[2] State Farm insured Buckingham's passenger's car. At the time of the incident, Buckingham owned a car insured by Colonial Insurance Company of Wisconsin. Nationwide acquired Colonial after the incident and assumed the policy on Buckingham's vehicle. It is undisputed that the unknown driver was an "uninsured motorist" under the terms of both policies.

State Farm's uninsured motorist policy states:
We will pay damages for bodily injury and property damage an insured is legally entitled to collect from the owner or driver of an uninsured motor vehicle. The bodily injury or property damage must be caused by accident arising out of the operation, maintenance or use of an uninsured motor vehicle. (emphasis added).
Nationwide's policy states:
We will pay damages for bodily injury which an insured person is legally entitled to recover from the owner or operator of an uninsured motor vehicle. The bodily injury must be caused by accident and arise out of the ownership, maintenance or use of an uninsured motor vehicle. (emphasis added).
[3] Super. Ct. Civ. R. 16.1.
[4] See infra, note 1.
[5] Grand Ventures, Inc. v. Whaley, 632 A.2d 63, 66 (Del.1993); see also Judge v. Rago, 570 A.2d 253, 255 (Del.1990).
[6] 700 A.2d at 132.
[7] 415 N.W.2d 876.
[8] Id. at 878.
[9] Id.
[10] Royal, 700 A.2d at 132; see also Frank v. Horizon Assur. Co., 553 A.2d 1199, 1201 (Del. 1989).
[11] Klug, 415 N.W.2d at 878.
[12] Royal, 700 A.2d at 132.
[13] Id.
[14] Id. at 132-133; See also Dick v. Koutoufaris, 1990 WL 106182 (Del.Super.) (where the plaintiff was raped in a parked car, and trial judge concluded that the car was merely the situs of the attack. The Superior Court judge analyzed the facts to determine coverage under Delaware's no-fault statute, which establishes that benefits may be available to indemnify for bodily injury arising out of ownership, maintenance, or use of the vehicle. The trial judge stated "[t]here is no causal connection or nexus between the use of the vehicle and the injuries sustained by the plaintiff; the injuries were not caused by or inflicted by the vehicle; thus, this Court cannot conclude that no-fault benefits would be available to her.").
[15] Klug, 415 N.W.2d at 878; see also Royal 700 A.2d at 132.
[16] Id. at 133.
[17] See Foss v. Cignarella, 196 N.J.Super. 378, 482 A.2d 954 (Law.Div.1984) (Intentional stabbing by a motorist after an accident did not arise "out of the use" of the automobile and was not reasonably foreseeable by parties to the insurance contract as within the normal use of the vehicle.); Nationwide v. Shumate, 63 F.Supp.2d 745, 747 (S.D.W.Va.1999) (Injuries resulting from an intentional physical assault by an angry uninsured motorist did not arise out of the operation, maintenance and use of the vehicle.); Cummings v. State Farm Mut. Auto. Ins. Co., 408 Pa.Super. 381, 596 A.2d 1138, 1140 (1991) (Injuries sustained as a result of a physical altercation between drivers after an accident do not arise out of the maintenance or use of the vehicle.); Day v. State Farm Mut. Ins. Co., 261 Pa.Super. 216, 396 A.2d 3, 5 (1978) (Insured plaintiff's broken ankle which was caused by other driver knocking insured down with his fists, not with his truck, did not fall within uninsured motorist provision making insurer liable for injuries "arising out of the ownership, maintenance or use of such uninsured motor vehicle" since no injury was caused by the collision of the two vehicles in question.); Hawkeye Security Ins. Co. v. Gilbert, 124 Idaho 953, 866 P.2d 976 (Ct.App.1994) (Bicyclist's injuries inflicted during dispute with motorist after motorist left car, walked onto roadway, and made physical contact with bicyclist when bicyclist attempted to pass did not arise out of motorist's use of motor vehicle and, thus, no liability coverage was provided to motorist under automobile liability policy or mandated by no-fault statute; injuries were caused by motorist's independent acts which occurred after leaving automobile.).
[18] Lindsey v. Sturm, 436 N.W.2d 788, 790 (Minn.Ct.App.) (citing Prosser, LAW OF TORTS, 282-283 (4th ed. 1971)).
[19] Holm v. Mutual Service Cas. Ins. Co., 261 N.W.2d 598, 603 (Minn.1977).
[20] Id.
[21] Wieneke v. Home Mutual Ins. Co., 397 N.W.2d 597 (Minn.App.1986) petition for review denied (Minn., January 21, 1987); Edwards v. State Farm Mutual Auto. Ins. Co., 399 N.W.2d 95 (Minn.App.1986) (intervening act where assailant drove victim to countryside, stopped car, then raped and killed her, leaving her body in the country), petition for review denied (Minn., March 13, 1987).
[22] Id.
[23] Buckingham urged us to find it significant that the assailant used a tire iron, a "part of the truck" that was designed to be used in the operation, or maintenance of the vehicle. We decline that invitation. Under that theory, any assailant who removes an instrumentality connected in some way to his vehicle and uses it to assault another, a use totally unconnected to the operation or maintenance of the vehicle, would result in uninsured motorist coverage. This proposition is illogical, at best and silly at worst. The focus should be on the assailant's criminal intent when he abandoned his use or operation of the vehicle, not on whether he removes a car seat, a hubcap, a baseball bat or a water bottle to commit the assault.
[24] The dissenters agreed with this proposition in Royal. They noted, "[t]he facts in this case are distinguishable from those cases in which the vehicle has come to rest and, thus, was not an active accessory to the infliction of the injury. An example of [this] . . . is the scenario of a disagreement between two motorists that results in the actors exiting their cars and committing an assault. In such cases the vehicles merely transport the actors to the location and add nothing more to the danger of the situation." 700 A.2d at 135.
[25] Royal, 700 A.2d at 133 (quoting National Union Fire Ins. Co. v. Fisher, 692 A.2d 892, 896 (Del.1997)).