Matthew KELTY, Plaintiff
Below, Appellant,

v.

STATE FARM MUTUAL AUTOMO-
BILE INSURANCE COMPANY,
Defendant Below, Appellee.

No. 121, 2012.

Supreme Court of Delaware.

Submitted: May 8, 2013.
Decided: July 26, 2013.

Gary S. Nitsche, Weik, Nitsche & Dougherty, Wilmington, Delaware for appellant.

Danielle K. Yearick (argued) and Nicholas M. Tyler, Tybout, Redfearn & Pell, Wilmington, Delaware for appellee.

Before STEELE, Chief Justice, HOLLAND, BERGER, JACOBS and RIDGELY, Justices constituting the Court en Banc.

STEELE, Chief Justice:

■ This case addresses the scope of insurance coverage under Delaware's personal injury protection (PIP) statute.[1] A plaintiff who was injured in an accident sought PIP benefits from an insurance carrier. To determine whether the plaintiff was entitled to PIP benefits, a Superior Court judge applied Delaware's current three-part test and analyzed: (1) "whether the vehicle was an 'active accessory' in causing the injury," (2) "whether there was an act of independent significance that broke the causal link between use of the vehicle and the injuries inflicted," and (3) "whether the vehicle was used for transportation purposes."[2] After concluding that the insured vehicle was not used for transportation purposes, a Superior Court judge granted the insurance carrier's motion for summary judgment. After reexamining the current Delaware statutory framework for PIP coverage, we conclude that the test's "transportation purposes" element must be rejected. Therefore, we must REVERSE the Superior Court judgment and REMAND.

## I. FACTUAL AND PROCEDURAL BACKGROUND[3]

### A. *Matthew Kelty Falls from a Tree While Cutting Branches*

On August 3, 2008, Plaintiff–Appellant Matthew Kelty was at John and Shirley Lovegrove's residence helping the Lovegroves cut branches from the top of a tree. Kelty climbed into the tree, positioned himself among the branches, and used a chainsaw to cut branches off the tree. Because the tree stood near a power line, Kelty and the Lovegroves needed a way to ensure that the trimmed branches would fall away from the power line after being cut. Their solution was to tie one end of a rope to the targeted branch and the other end to the trailer hitch on John's truck. John sat in the truck and accelerated in order to pull the rope taut, while Kelty cut the branch. When a branch fell, the rope would pull it away from the power line. Shirley, who was standing nearby, would then drag the branch away.

As one might expect, this plan went awry. Kelty claims that while he was cutting a branch, John rapidly accelerated, causing the rope to snap.[4] Freed of the truck's pull, the branch recoiled, broke off the tree, struck the power line, and knocked Kelty out of the tree in the process. Kelty suffered multiple injuries.

Kelty sued John, whose automobile insurer, Defendant–Appellee State Farm Mutual Automobile Insurance Company, settled the claim under the bodily injury liability coverage in the policy. Kelty also sought benefits based on John's PIP coverage under the same policy. State Farm denied Kelty's PIP claim.

---

1. PIP insurance is part of Delaware's "no-fault" insurance scheme. *Gray v. Allstate Ins. Co.*, 668 A.2d 778, 779 (Del.Super.1995). Delaware's PIP statute, however, is not true no-fault insurance because "it does not affect the ability of the traffic accident victim to sue in tort, but merely provides benefits [that] are in addition to those afforded by the standard automobile coverage." *Progressive N. Ins. Co. v. Mohr*, 47 A.3d 492, 504 (Del.2012) (Steele, C.J., dissenting) (citations omitted).

2. *Sanchez v. Am. Indep. Ins. Co.*, 886 A.2d 1278, 2005 WL 2662960, at *2 (Del. Oct. 17, 2005) (ORDER) (citing *Nationwide Gen. Ins. Co. v. Royal*, 700 A.2d 130, 132 (Del.1997)).

3. These facts are taken from the record on appeal and from the trial judge's Opinion, *Kelty v. State Farm Mutual Automobile Insurance Co.*, 2012 WL 1413966 (Del.Super. Feb. 21, 2012).

4. The parties dispute whether the truck caused the rope to snap.

## B. Procedural History

After State Farm denied Kelty's PIP claim, Kelty sued State Farm in Superior Court. State Farm moved for summary judgment under Superior Court Civil Rule 56, arguing that Kelty was not entitled to PIP benefits under 21 *Del. C.* § 2118. The Superior Court judge applied the three-part test[5] that this Court had previously adopted to determine whether a person is entitled to PIP benefits.[6] He concluded that there was no genuine issue about the material fact that Lovegrove was not using the truck for transportation purposes when Kelty fell—as the test's third prong requires—and he therefore granted State Farm's summary judgment motion.[7] Kelty appeals from the Superior Court's grant of summary judgment.

## II. STANDARD OF REVIEW

■ We review a Superior Court judge's decision to grant summary judgment *de novo*.[8] When evaluating a grant of summary judgment, "we view all facts in the light most favorable to the nonmoving party" in order to determine whether there is a genuine issue of material fact in

dispute.[9] We also review a trial judge's interpretation of a statute *de novo*.[10]

## III. ANALYSIS

### A. 21 Del. C. § 2118's Structure

■ The proper scope of Delaware's PIP statute is a question of statutory interpretation. When interpreting a statute, we attempt to determine and give effect to the General Assembly's intent.[11] We give unambiguous statutory language its plain meaning "unless the result is so absurd that it cannot be reasonably attributed to the legislature."[12] If we determine that a statute is ambiguous, we "will resort to other sources, including relevant public policy," to determine the statute's purpose.[13]

The General Assembly requires owners of Delaware-registered motor vehicles to obtain certain "minimum insurance coverage" before using their vehicles. The relevant statute, 21 *Del. C.* § 2118, recognizes four types of insurance coverage: (1) indemnification for damages arising from legal liability, (2) no-fault "special damages" compensation for injured persons (PIP coverage), compensation for property damage, and (4) compensation for damage to the insured vehicle.[14]

5. *Kelty v. State Farm Mut. Auto. Ins. Co.*, 2012 WL 1413966, at *1 (Del.Super. Feb. 21, 2012) (citations omitted).

6. *Sanchez*, 2005 WL 2662960, at *2 (citing *Royal*, 700 A.2d at 132 (adopting the Supreme Court of Minnesota's test in *Continental Western Insurance Co. v. Klug*, 415 N.W.2d 876 (Minn.1987))).

7. *Kelty*, 2012 WL 1413966, at *3 (citing *Cesefski v. State Farm Ins. Co.*, 2002 WL 1482790, at *2 (Mich.Ct.App. July 9, 2002)).

8. *E. Sav. Bank, FSB v. CACH, LLC*, 55 A.3d 344, 347 (Del.2012) (citing *Williams v. Geier*, 671 A.2d 1368, 1375–76 (Del.1996)).

9. *Id.* (citing *Williams*, 671 A.2d at 1375–76).

10. *Sussex Cnty. Dep't of Elections v. Sussex Cnty. Republican Comm.*, 58 A.3d 418, 421

(Del.2013) (citing *Freeman v. X–Ray Assocs., P.A.*, 3 A.3d 224, 227 (Del.2010)).

11. *Progressive N. Ins. Co. v. Mohr*, 47 A.3d 492, 495 (citing *LeVan v. Independence Mall, Inc.*, 940 A.2d 929, 932 (Del.2007)).

12. *Id.* at 495–96.

13. *Id.* at 496.

14. 21 *Del. C.* § 2118(a); *see also Mohr*, 47 A.3d at 505 (Steele, C.J., dissenting) (explaining that "[Section 2118(a)] is divided into four paragraphs that describe the different areas of mandated insurance coverage"). Although Section 2118(a) appears to impose a requirement that motor vehicle owners purchase all four types of insurance coverage, a motor vehicle owner may elect to exclude the coverage described in Section 2118(a)(4).

Section 2118(a)(1) requires insurance providing "[i]ndemnity from legal liability for bodily injury, death or property damage *arising out of ownership, maintenance or use of the vehicle.*"[15] Section 2118(a)(2) contains the PIP mandate, which requires insurance providing for "[c]ompensation to injured persons for reasonable and necessary expenses" and provides, in relevant part, that "[t]he coverage required by this paragraph shall be applicable ... *to any other person injured in an accident involving [the insured] motor vehicle,* other than an occupant of another motor vehicle."[16]

### B. The Klug Test's Development and Extension to Section 2118(a)(2)

■ Another statute, 18 *Del. C.* § 3902, requires liability insurance policies to provide uninsured and underinsured motorist (UIM) coverage for injuries and property damage "resulting from the ownership, maintenance or use of [an] uninsured or hit-and-run motor vehicle."[17] In *Nationwide General Insurance Co. v. Royal,* we analyzed whether an injury "ar[o]se out of the use of a motor vehicle" under Delaware's UIM statute, using the Supreme Court of Minnesota's *Continental Western Insurance Co. v. Klug test.*[18] Klug re-

quires a court to analyze (1) "whether the vehicle was an 'active accessory' in causing the injury," (2) "whether there was an act of independent significance that broke the causal link between use of the vehicle and the injuries inflicted," and (3) "whether the vehicle was used for transportation purposes."[19]

We extended *Klug* to PIP claims in *Sanchez v. American Independent Insurance Co.*[20] The *Sanchez* policy provided PIP coverage for injuries that "[a]rise out of the ownership, maintenance or use of a motor vehicle as a motor vehicle."[21] In extending the *Klug* test to PIP claims, we noted that "[b]oth the [*PIP*] *statute* and the UIM statute provide coverage for injuries 'arising out of' automobile accidents."[22]

When interpreting the PIP statute, Section 2118(a)(2), *Sanchez* incorrectly cited Section 2118(a)(1), the indemnity from legal liability statute. The PIP statute does not contain the words "arising out of ownership, maintenance or use of the vehicle."[23] Instead, Section 2118(a)(2)(c) determines the scope of PIP coverage. That statute provides that "[t]he coverage required by this paragraph shall be applicable to ... any other person injured in an accident involving such motor vehicle, oth-

---

15. 21 *Del. C.* § 2118(a)(1) (emphasis added).

16. *Id.* § 2118(a)(2)(a), (c) (emphasis added).

17. 18 *Del. C.* § 3902(a).

18. *Nationwide Gen. Ins. Co. v. Royal,* 700 A.2d 130, 132 (Del.1997) (citing *Cont'l W. Ins. Co. v. Klug,* 415 N.W.2d 876, 878 (Minn. 1987)).

19. *Id.* (citing *Klug,* 415 N.W.2d at 878).

20. *Sanchez v. Am. Indep. Ins. Co.,* 886 A.2d 1278, 2005 WL 2662960, at *2 (Del. Oct. 17, 2005) (ORDER) (citing *Royal,* 700 A.2d at 132); *see also Campbell v. State Farm Mut.*

*Auto. Ins. Co.,* 12 A.3d 1137, 1139 (Del.2011) (applying the *Klug* test to a PIP claim).

21. *Sanchez,* 2005 WL 2662960, at *2 (internal quotation marks omitted).

22. *Id.* (emphasis added).

23. *See* 21 *Del. C.* § 2118(a)(2); *see also Sierra v. Allstate Prop. & Cas. Ins. Co.,* 2013 WL 2636043, at *2 (Del.Super. June 12, 2013) (reasoning that the language "arising out of ownership, maintenance or use of the vehicle" did not apply to PIP coverage because it "appears only in the paragraph defining the requirements for indemnity coverage"). In contrast, the Minnesota no-fault statute provides coverage for all "injur[ies] arising out of

er than an occupant of another motor vehicle."[24] State Farm argues that the words "required by this paragraph" incorporate Section 2118(a)(1)'s "arising out of ownership, maintenance or use of the vehicle" language. In our view, the statute does not permit this construction. Other provisions of Section 2118 refer to "paragraphs (1) through (4) of subsection (a) of this section."[25] This statutory language indicates that "paragraph" in Section 2118(a)(2)(c) refers only to paragraph (2), not to the entirety of "subsection" (a).

■ Even though *Sanchez* relied on an inapplicable statutory provision applied to policy language to extend *Klug* to the PIP statute, we need not discard the entire *Klug* test. That test provides a useful framework for analyzing PIP claims to the extent that the test is consistent with Section 2118(a)(2). Therefore, we now analyze whether the *Klug* test is consistent with Section 2118(a)(2)'s requirement that a person be "injured in an accident *involving* [the insured] motor vehicle."[26]

■ The first *Klug* prong—"whether the vehicle was an 'active accessory' in causing the injury"[27]—is a useful framework for analyzing whether a person was injured in an accident "involving" a motor vehicle. We have defined "active accessory" to require "something less than proximate cause in the tort sense and something more than the vehicle being the mere situs of the injury."[28] A vehicle is not "involved" in the accident causing the injuries if it is merely an injury's situs.[29]

*Klug*'s second prong—"whether there was an act of independent significance that broke the causal link between use of the vehicle and the injuries inflicted"[30]—is also consistent with the PIP statute. An accident cannot be said to "involve" a vehicle where an independent act breaks the casual link between the vehicle and the injuries inflicted, such as (for example) when an individual leaves a vehicle and assaults a person.[31] Construing the statute to require insurers to provide PIP benefits for intentional, criminal conduct such as an assault would create an absurd result.[32]

maintenance or use of a motor vehicle." *Minn.Stat.* § 65B.46, subd. 1.

24. 21 *Del. C.* § 2118(a)(2)(c). Sections 2118(a)(2)(d) and (e) further describe the scope of PIP coverage. *See Progressive N. Ins. Co. v. Mohr*, 47 A.3d 492, 497–98, 502 (Del. 2012) (interpreting the scope of PIP coverage under 21 *Del. C.* § 2118(a)(2)(e)).

25. 21 *Del. C.* § 2118(f), (g).

26. *Id.* § 2118(a)(2)(c) (emphasis added).

27. *Nationwide Gen. Ins. Co. v. Royal*, 700 A.2d 130, 132–33 (Del.1997) (holding that a vehicle was not an "active accessory" in causing an injury when a passenger shot a firearm at a home from the vehicle's window) (citing *Cont'l W. Ins. Co. v. Klug*, 415 N.W.2d 876, 878 (Minn.1987)).

28. *Id.* at 132 (quoting *Klug*, 415 N.W.2d at 878) (internal quotation marks omitted).

29. Superior Court case law interpreting Section 2118(a)(2) requires a plaintiff to show

"that the injury occurred by virtue of the inherent nature of using the motor vehicle." *Gray v. Allstate Ins. Co.*, 668 A.2d 778, 780 (Del.Super.1995) (citations omitted). Read in context, this language addresses the necessary causal relationship between the injury and the vehicle, an inquiry encompassed within the *Klug* test's "active accessory" prong.

30. *Royal*, 700 A.2d at 132 (citing *Klug*, 415 N.W.2d at 878).

31. *See State Farm Mut. Auto. Ins. Co. v. Buckingham*, 919 A.2d 1111, 1116 (Del.2007) (holding that a plaintiff did not satisfy *Klug* second prong because his injuries stemmed from being assaulted by a tire iron, an act of independent significance breaking the causal link between the vehicle and the injuries).

32. *Doroshow, Pasquale, Krawitz & Bhaya v. Nanticoke Mem. Hosp., Inc.*, 36 A.3d 336, 343 (Del.2012) (quoting *Moore v. Wilm. Hous. Auth.*, 619 A.2d 1166, 1173 (Del.1993) ("We read statutes by giving language its reason-

Although *Klug's* first and second prongs are consistent with Section 2118(a)(2), the test's third prong—"whether the vehicle was used for transportation purposes" [33]—cannot be reconciled with the statute. The parties devote much effort to disputing whether Kelty and the Lovegroves were using the truck to "transport" branches from the tree to the ground or whether the truck was a mere "tool" maintaining tension on the tree branch. But, the statute does not restrict the scope of the term "involve" to "transportation purposes." The statute only requires that the plaintiff be "injured in an accident involving [the insured] motor vehicle." [34] Regardless of whether the truck was used as a tool or to transport the branch, the truck was *involved* in the accident. Because the *Klug* test's third prong has no basis in Section 2118(a)(2), we reject those cases that apply *Klug* to the PIP statute to the extent they require a plaintiff to satisfy *Klug's* "transportation purposes" prong. [35] We further pause to note that the Superior Court judge understandably followed the precedent that we now reject.

## C. Did Kelty Satisfy Klug's First and Second Prongs?

Therefore, to determine whether Kelty's "accident involv[ed]" John's truck, [36] we must analyze whether (1) the vehicle was an active accessory in causing the injury and (2) there was an act of independent significance that broke the causal link between the use of the vehicle and the injuries inflicted. [37]

 The test first requires us to determine "whether the vehicle was an 'active accessory' in causing the injury," which means "something less than proximate cause in the tort sense and something more than the vehicle being the mere situs of the injury." [38] In *Sanchez v. American Independent Insurance Co.*, we held that a vehicle was merely an injury's situs because the plaintiff happened to be sitting in a car when a pedestrian accidently shot him. [39] We also held that a vehicle was merely an injury's situs in *Campbell v. State Farm Mutual Automobile Insurance Co.* [40] In *Campbell*, the driver closed a garage door from inside her car. [41] The ga-

able and suitable meaning while avoiding 'patent absurdity.' ")).

**33.** *Royal*, 700 A.2d at 132.

**34.** 21 *Del. C.* § 2118(a)(2)(c).

**35.** While *stare decisis* would ordinarily compel our adherence to a settled legal question, the *Klug* test's transportation prong lacks a statutory basis. That constitutes a "clear manifestation of error," which compels us to readdress the question. *See White v. Liberty Ins. Corp.*, 975 A.2d 786, 790–91 (Del.2009) (quoting *Account v. Hilton Hotels Corp.*, 780 A.2d 245, 248 (Del.2001)). Because neither party has identified a Delaware PIP case that denied insurance benefits to a person based on the *Klug* test's transportation prong, our modification of the test does not alter any other case's outcome.

**36.** Our modification of the *Klug* test is limited to the PIP statute and we do not address those cases applying the three-prong *Klug* test to other statutes. *See, e.g., Royal*, 700 A.2d at

132 (applying the *Klug* test to the UIM statute).

**37.** Although the State Farm policy provided coverage for "bodily injury to an insured caused by accident resulting from the maintenance or use of a motor vehicle," the policy cannot provide less coverage than the statute requires. *See Progressive N. Ins. Co. v. Mohr*, 47 A.3d 492, 495 (Del.2012) (noting that an insurance carrier may be statutorily required to provide coverage even if an insurance policy does not by its terms cover the injury).

**38.** *Royal*, 700 A.2d at 132 (quoting *Cont'l W. Ins. Co. v. Klug*, 415 N.W.2d 876, 878 (Minn. 1987) (internal quotation marks omitted)).

**39.** *Sanchez v. Am. Indep. Ins. Co.*, 886 A.2d 1278, 2005 WL 2662960, at *2 (Del. Oct. 17, 2005) (ORDER).

**40.** *Campbell v. State Farm Mut. Auto. Ins. Co.*, 12 A.3d 1137, 1139 (Del.2011).

**41.** *Id.*

rage door hit the plaintiff as it closed, injuring her.[42] We reasoned that the car's presence had no relationship with the injury because a wall-mounted garage door opener would have been equally able to cause the injury.[43] In contrast, in *State Farm Mutual Automobile Insurance Co. v. Buckingham,* we held that a car was an active accessory in causing an injury where the plaintiff provoked another driver to attack him by driving his car in a way that caused rocks to hit the other driver's truck.[44] In Kelty's case, the acceleration of John's truck[45] caused the rope to snap and the branch to recoil, knocking Kelty out of the tree. The truck was, therefore, an active accessory in causing the injury, because the force it exerted on the rope and branch led to Kelty's injuries. In contrast, the vehicles in *Sanchez* and *Campbell* had a negligible impact on the events that caused the respective plaintiffs' injuries. Therefore Kelty's accident satisfied *Klug's* first prong.

██ *Klug's* second prong requires us to determine "whether there was an act of independent significance that broke the causal link between use of the vehicle and the injuries inflicted."[46] In Buckingham, we found an act of independent significance that broke the required casual link where a person got out of his truck and attacked the plaintiff.[47] *Buckingham* noted that intentional or criminal acts resulting from "road rage" generally break the casual link between the vehicle and the injuries.[48] Here, unlike *Buckingham*— where the plaintiff's driving provoked another driver but the driver's decision to leave the vehicle and assault the plaintiff was an independent act—John's truck's acceleration snapped the rope, which caused the branch to recoil and knock Kelty out of the tree. Kelty's fall, the branch breaking, and the rope snapping all depended upon John's truck applying force to the rope. That bears no resemblance to an assailant's independent decision, unrelated to the vehicle, to assault a person. Kelty has satisfied the PIP statute's requirement that he be injured in an accident involving a vehicle. We, therefore, must reverse the Superior Court's entry of summary judgment in State Farm's favor.

We rest our conclusion solely on the PIP statute's language, not on public policy grounds. State Farm has raised compelling arguments against providing coverage in this case, but we are judges, not legislators, and cannot substitute our opinions for those of the General Assembly. Requiring that a vehicle be used for transportation purposes may be sound policy, but the General Assembly is more appropriately equipped to weigh the pros and cons of imposing such a requirement. Therefore, unless and until the General Assembly provides us with a supportive statutory

---

**42.** *Id.*

**43.** *Id.*

**44.** *State Farm Mut. Auto. Ins. Co. v. Buckingham,* 919 A.2d 1111, 1114 (Del.2007).

**45.** We recognize that the parties dispute the rope's condition and whether the rope would have snapped regardless of the truck's acceleration. However, this factual dispute cannot be resolved at the summary judgment stage. *See Merrill v. Crothall–Am., Inc.,* 606 A.2d 96, 99 (Del.1992) (citing *Moore v. Sizemore,* 405 A.2d 679, 680 (Del.1979) (noting that "entry of summary judgment is proper only where there are no material factual disputes")). Taking the facts in the light most favorable to Kelty as the nonmoving party, we accept that the acceleration caused the rope to snap for the purposes of summary judgment.

**46.** *Nationwide Gen. Ins. Co. v. Royal,* 700 A.2d 130, 132 (Del.1997) (citing *Cont'l W. Ins. Co. v. Klug,* 415 N.W.2d 876, 878 (Minn. 1987)).

**47.** *Buckingham,* 919 A.2d at 1116.

**48.** *Id.* at 1114–15 (citations omitted).

basis, we must reject the judicial gloss *Klug's* "transportation purposes" prong wrongly placed on our PIP statute.[49]

## IV. CONCLUSION

For these reasons, we REVERSE the Superior Court's grant of summary judgment and REMAND for further proceedings consistent with this opinion.

49. Because we reverse the trial judge's grant of summary judgment, we do not reach Kelty's alternative contention that State Farm's automobile liability insurance policy settlement precluded it from denying PIP benefits stemming from the same accident.