IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

LAMAR JARRETT,

                Plaintiff,

    v.

TITAN INDEMNITY COMPANY,
a foreign corporation,

                Defendant.

C.A. No. K16C-06-025 WLW
Kent County

Submitted: October 11, 2017
Decided: December 11, 2017

## ORDER

Defendant's Motion for Summary Judgment.
*Granted.*

Scott E. Chambers, Esquire and Gary E. Junge, Esquire of Schmittinger & Rodriguez, P.A., Dover, Delaware; attorneys for the Plaintiff.

Lisa M. Grubb, Esquire of the Law Office of Cynthia G. Beam, Wilmington, Delaware; attorney for the Defendant.

WITHAM, R.J.

Before the Court is Defendant Titan Indemnity Company's ("Titan") Motion for Summary Judgment and Plaintiff Lamar Jarrett's Response in Opposition. Titan's motion is hereby GRANTED.

## FACTUAL AND PROCEDURAL BACKGROUND

On February 3, 2016, Mr. Jarrett, intending to perform maintenance on another person's vehicle in a nearby apartment parking lot, transported his tools to the parking lot in his own vehicle. Mr Jarrett parked his vehicle directly beside the other vehicle that he intended to conduct maintenance on. After examining the other vehicle, Mr. Jarrett turned to his own vehicle to retrieve the tools that he had brought. Mr. Jarrett was standing next to his vehicle, with his keys in hand, preparing to unlock the door when his brother yelled that a tree was falling. Mr. Jarrett attempted to move away from the falling tree, but he and his vehicle were struck by the tree before he could escape.

At the time of the loss described, Mr. Jarrett's vehicle was insured by Titan. Mr. Jarrett applied to Titan for no-fault PIP benefits as a result of his loss. However, Titan denied coverage for his loss pursuant to the terms of Mr. Jarrett's policy as his injuries did not arise, "out of the: (1) ownership; (2) maintenance; or (3) use; of a motor vehicle."

Mr. Jarrett subsequently filed suit to recover his unpaid medical expenses, up to the contractual policy limits, damages set forth in 21 *Del. C.* § 2118B(c), together with pre and post-judgment interest and the costs of litigation.

On July 27, 2017, Titan filed its Motion for Summary Judgment pursuant to Superior Court Civil Rule 56(c), on the basis that it is entitled to judgment as a matter

2

of law.

On August 17, 2017, Mr. Jarrett filed his Response in Opposition to Titan's Motion for Summary Judgment.

On August 18, 2017, Titan filed a Reply to Mr. Jarrett's Response.

On September 22, 2017, the Court held oral argument for this matter. At the end of the hearing, the Court determined that it was necessary for the parties to submit supplemental briefing.

On October 4, 2017, Mr. Jarrett filed his supplemental briefing with the Court. Titan filed its supplemental brief on October 11, 2017.

## THE PARTIES CONTENTIONS

In Titan's initial brief filed on July 27, 2017, Titan contends that it is entitled to summary judgment because Mr. Jarrett's injury "did not arise out of the: (1) ownership; (2) maintenance; or (3) use; of his motor vehicle as a motor vehicle." Specifically, Titan contends that Mr. Jarrett is not entitled to PIP benefits because, according to Titan, Mr. Jarrett cannot demonstrate that his bodily injury "arose out of the use of a motor vehicle." In addition, Titan contends that Mr. Jarrett's vehicle was not an "active accessory" in causing the injury. Next, Titan alleges that the falling tree was an act of independent significance that broke the causal link between the use of Mr. Jarrett's vehicle and the injuries inflicted at the time of the use. Finally, Titan contends that Mr. Jarrett is not entitled to PIP benefits because his vehicle was not being used for transportation purposes.

In Mr. Jarrett's initial response on August 17, 2017, he contends that Titan is not entitled to summary judgment because: (1) he was an occupant of his vehicle at

3

the time he was injured; (2) his vehicle was an active accessory in causing the injury; and (3) the tree falling does not constitute an act of independent significance. Mr. Jarrett alleges that the PIP statute does not require that a claimant show that he was "using" the insured vehicle or that it be "used for transportation purposes." Finally, Mr. Jarrett contends that Titan's "independent significance" defense is barred because Titan did not raise it as an affirmative defense in its answer. Therefore, Mr. Jarrett requests that the Court deny Titan's motion for summary judgment.

In Titan's Reply, filed on August 18, 2017, Titan contends that Mr. Jarrett was not "engaged in a task related to the operation of his vehicle." Titan also alleges that Mr. Jarrett would not have been considered an occupant of his vehicle. Finally, Titan believes that Mr. Jarrett is not entitled to PIP benefits because, according to Titan, Mr. Jarrett's vehicle was merely the situs of his injuries and the tree falling constituted an act of independent significance. Titan claims that it included the argument, regarding independent significance, in Titan's denial of benefits letter to Mr. Jarrett. In sum, Titan requests this Court grant summary judgment.

In Mr. Jarrett's letter to the Court, filed on October 4, 2017, he clarified that, despite the language in Mr. Jarrett's insurance policy, the only requirements that Mr. Jarrett must demonstrate to qualify for PIP coverage are those requirements contained in 21 *Del. C.* § 2118(a)(2)c. Mr. Jarrett also clarifies his position regarding his occupancy at the time of his injury, as well as his belief that his vehicle was an "active accessory" in causing his injuries. And, Mr. Jarrett re-states his opinion that he does not believe that an act of independent significance occurred when the tree fell on him. In sum, Mr. Jarrett asks the Court to deny Titan's motion for summary

judgment.

In Titan's letter to the Court, filed on October 11, 2017, Titan concedes that the PIP statute requires coverage to any person, "occupying such motor vehicle and to any other person injured in an accident involving such motor vehicle, other than an occupant of another vehicle."[1] Pursuant to this standard, Titan contends that Mr. Jarrett was not an occupant of his vehicle because, according to Titan, "close proximity to an insured vehicle is not enough to warrant extension of PIP coverage." In addition, Titan contends that Mr. Jarrett's vehicle was not an "active accessory" in causing his injuries. Rather, according to Titan, the vehicle was merely the situs of the accident.

## STANDARD OF REVIEW

Summary judgment is granted only if the moving party establishes that there are no genuine issues of material fact in dispute and judgment may be granted as a matter of law.[2] All facts are viewed in a light most favorable to the non-moving party.[3] Summary judgement may not be granted if the record indicates that a material fact is in dispute, or if there is a need to clarify the application of law to the specific circumstances.[4] When the facts permit a reasonable person to draw only one

---

[1] 21 *Del. C.* § 2118(a)(2)c.

[2] Super. Ct. Civ. R. 56(c).

[3] *Hammond v. Colt Indus. Operating Corp.*, 565 A.2d 558, 560 (Del. Super. 1989).

[4] Super. Ct. Civ. R. 56(c).

inference, the question becomes one for decision as a matter of law.[5] If the non-moving party bears the burden of proof at trial, yet "fails to make a showing sufficient to establish the existence of an element essential to that party's case," then summary judgment may be granted against that party.[6]

## DISCUSSION[7]

Delaware requires the owners of Delaware-registered motor vehicles to obtain certain insurance coverage.[8] The personal injury protection ("PIP") mandate requires insurance that provides for "[c]ompensation to injured persons for reasonable and necessary expenses . . . ."[9] PIP coverage is available to each person "occupying such motor vehicle and to any other person injured in an accident involving such motor vehicle, other than an occupant of another motor vehicle."[10]

This Court in *Friel v. Hartford Fire Ins. Co.*, held that, "the language in Section 2118(a)(2)c – 'coverage' . . . shall be applicable to each person occupying such motor vehicle and to any other person injured in an accident involving such

---

[5] *Wootten v. Kiger*, 226 A.2d 238, 239 (Del. 1967).

[6] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

[7] In this case, the parties agree that 21 *Del. C.* § 2118(a)(2) controls the outcome of the Court's decision, rather than the terms of Titan's insurance policy with Mr. Jarrett. Therefore, the Court declines to address the language of the policy, instead relying exclusively on § 2118(a)(2) and relevant precedent.

[8] 21 *Del. C.* § 2118(a)(2).

[9] 21 *Del. C.* § 2118(a)(2)a.

[10] 21 *Del. C.* § 2118(a)(2)c.

6

motor vehicle . . . .' – to require that both occupants and non-occupants be 'injured in an accident involving a motor vehicle."[11] In other words, as *Friel* held, "the correct analysis should be: first, use the disjunctive two-prong *Fisher* test to determine whether the plaintiff is an occupant; and second, use the two-prong *Kelty* test to determine whether the accident involved a motor vehicle."[12]

*I. The Fisher Test*

The *Fisher* test provides, that a person is an "occupant" of the vehicle "if he or she is either: (a) within a reasonable geographic perimeter of the vehicle or (b) engaged in a task related to the *operation* of the vehicle."[13] The Delaware Supreme Court found that a claimant qualifies as an occupant when the claimant is "in, entering, exiting, touching, or within reach of the covered vehicle."[14]

In *Friel*, the Court determined that the plaintiff qualified as an occupant of the vehicle under the first prong of the *Fisher* test.[15] The plaintiff, in that case, "was within a reasonable geographic perimeter because he was standing in the back part of the truck when his injury occurred."[16] The Court did not address the second-prong

---

[11] *Friel v. Hartford Fire Ins. Co.*, 2014 WL 1813293, at *5 (Del. Super. May 6, 2014).

[12] *Id.*

[13] *Nat'l Union Fire Ins. Co. of Pittsburgh v. Fisher*, 692 A.2d 892, 896 (Del. 1997) (emphasis in original).

[14] *Id.* at 897.

[15] *Friel*, 2014 WL 1813293 at *4.

[16] *Id. See also Walker v. M & G Convoy, Inc.*, 1989 WL 158511 (Del. Super. Nov. 2, 1989) (holding that plaintiff who slipped and fell on ice while securing cars on his employer's motor

of *Fisher* as to whether the plaintiff was engaged in a task related to the operation of the vehicle because the two-part test is disjunctive, and further analysis was unnecessary.[17]

In this case, the Court finds that Mr. Jarrett qualifies as an occupant of his vehicle under the first prong of the *Fisher* test. Mr. Jarrett was within a reasonable geographic perimeter of the vehicle because he was standing directly next to his vehicle, with his keys in hand, attempting to open the vehicle's door when his injury occurred. Like *Friel*, the Court will not address the second-prong of the *Fisher* test because it is unnecessary.

*II. The Kelty Test*

In *Kelty*, the Delaware Supreme Court outlined a two-part test to determine whether the plaintiff was "injured in an accident involving [the insured] motor vehicle" as required by 21 *Del. C.* § 2118(a)(2)c.[18] The Court must analyze: (1) whether the vehicle was an "active accessory" in causing the injury; and (2) "whether there was an act of independent significance that broke the causal link between the

---

vehicle carrier preparing to travel was very close to the vehicle and engaged in a task related to the vehicle and therefore was an occupier of a motor vehicle).

[17] *Id.*

[18] *Kelty v. State Farm Mut. Auto. Ins. Co.*, 73 A.3d 926, 932 (Del. 2013) (The test adopted by the Court in *Kelty* was originally known as the *Klug* test. However, the Court in *Kelty* dropped the third element of the *Klug* test. Although the Court in this case refers to the applicable test as the *Kelty* test, the Court recognizes that parties often cite the *Klug* test as the applicable test. Either reference is appropriate, as long as the parties understand that the third element of *Klug* was eliminated in *Kelty*).

vehicle and the injuries inflicted."[19] The Court defined active accessory to require "something less than proximate cause in the tort sense and something more than the vehicle being the mere situs of the injury."[20]

Mr. Jarrett, in his attempt to satisfy the *Kelty* test, urges the Court to consider *Walker v. M & G Convoy, Inc.*[21] Mr. Jarrett's reliance on *Walker*, however, is misplaced as *Walker* was decided before *Kelty* and does not address the "active accessory" prong of the *Kelty* test. Rather, *Walker* exclusively discusses the standard for determining whether or not a person is considered an "occupant" of a vehicle.[22] Thus, although the Court finds that *Walker* is inapplicable for purposes of the *Kelty* test, the Court acknowledges that *Walker* is still applicable for purposes of the *Fisher* test.[23]

Having addressed *Walker*, the Court finds that *Kelty*, *Sanchez*, and *Friel* are relevant to the Court's decision. The Court will, therefore, discuss each case in turn.

In *Kelty*, the Court concluded that the vehicle in that case was an "active accessory" in causing the plaintiff's injuries.[24] The plaintiff in *Kelty* was trimming tree branches and using a truck to pull away falling branches to avoid hitting power

---

[19] *Id.* at 930 (citing *Cont'l W. Ins. Co. v. Klug*, 415 N.W.2d 876, 878 (Minn. 1987)).

[20] *Id.* at 931.

[21] *Walker v. M & G Convoy, Inc.*, 1989 WL 158511 (Del. Super. Nov. 2, 1989).

[22] *Id.* at 1.

[23] *See supra* note 16.

[24] *Kelty*, 73 A.3d at 933.

lines. He tied one end of a rope to a branch and the other end to the truck, which was operated by someone else. While the plaintiff was in a tree cutting a branch, the person in the truck accelerated, causing the rope to snap and the branch to recoil, break from the tree, and strike the power line, which knocked the plaintiff from the tree.[25] The *Kelty* Court held that, unlike the vehicles in other cases that "had a negligible impact on the events" causing the plaintiff's injuries, the force exerted by the truck on the rope and branch led to the plaintiff's injuries, and therefore the truck was an active accessory in causing the plaintiff's injuries.[26]

In contrast, the Delaware Supreme Court held in *Sanchez v. American Independent Ins. Co.,*[27] that a vehicle was the "mere situs" of the plaintiff accidentally being shot.[28] "Although [the plaintiff] was shot while he was sitting in the car, his

---

[25] *Id.* at 928.

[26] *Id.* at 933.

[27] *Sanchez v. American Indep. Ins. Co.*, 2005 WL 2662960 (Del. Oct. 17, 2005) (TABLE).

[28] The Court recognizes that *Sanchez's* holding was partially abrogated by *Kelty*. The key word, however, is *partially*. *Kelty's* abrogation of *Sanchez* merely related to *Sanchez's* incorrect reliance upon the third prong of the *Klug* test, which requires that a vehicle be used for transportation purposes. *Kelty*, 73 A.3d at 930 (citing *Klug*, 415 N.W.2d at 878). *Kelty* held that the PIP statute does not contain the words "arising out of ownership, maintenance or use of the vehicle." *Id* at 930-31. Therefore, *Kelty* eliminated the third prong of *Klug* and overruled *Sanchez*. However, it is apparent that *Sanchez's* holding is still binding in regards to the first two prongs of the *Klug* test because *Kelty* applied *Sanchez's* holding to determine whether or not the plaintiff's vehicle in *Kelty* was an "active accessory" or the "mere situs" in causing the plaintiff's injury. *Id.* at 922-33. *Kelty* determined that, unlike *Sanchez*, the plaintiff's vehicle in *Kelty* constituted an "active accessory" in causing the plaintiff's injuries because the vehicle had more than a negligible impact on the events that caused the injuries. *Id.* at 933. *Kelty* is also not the last decision to recognize that *Sanchez* is relevant for the purpose of analyzing the first two prongs of the *Klug* test, now known as the *Kelty*

10

location was the only connection between the injury and the vehicle."[29] The plaintiff "could just have easily been walking or riding a bike through the intersection when he was shot."[30] The Court concluded "there was no casual connection between [the plaintiff's] use of the vehicle and his injuries."[31]

Likewise, in *Friel*, this Court held that the vehicle was not an active accessory in causing the plaintiff's injury but was the mere situs of the injury.[32] In *Friel*, the plaintiff arrived at Costco in his truck with pallets of product to deliver. While standing on the back of his truck, the plaintiff bent down to attach chains to a pallet and injured his back.[33] The chains were provided by his employer and used to attach the pallets to a forklift.[34] The Court explained that the injury occurred "after [the plaintiff] bent down to hook the chains to a pallet"; the chains "were not attached to

---

test. For instance, this Court relied on *Sanchez* in both *Jones v. Delaware Transit Corp.*, 2016 WL 5946494 (Del. Super. Oct. 13, 2016) and *Kanu v. Allstate Ins. Co.*, 2017 WL 2407091 (Del. Super. May 31, 2017). In sum, there should be no confusion as to why the Court is relying upon *Sanchez* in this decision because it is still binding for the purposes of the test set forth in *Kelty*.

[29] *Sanchez*, 2005 WL 2662960 at *2.

[30] *Id.*

[31] *Id.* at *3.

[32] *Friel*, 2014 WL 1813293, at *4; *see also Sierra v. Allstate Pro. & Cas. Ins. Co.*, 2013 WL 2636043, at *2 ("Indeed there is no particular significance to the fact that Plaintiff was touching a vehicle at the time he hurt his lower back reaching for a chain. His hand could have been touching anything and the injury would still have occurred.").

[33] *Friel*, 2014 WL 1813293, at *1.

[34] *Id.*

the truck and were not a part of the truck"; and the plaintiff "picked up the chains []
at the warehouse and transported them in the truck in anticipation of the pallet stop."[35]
The *Friel* Court therefore held: "The injury was in no way caused by [the] use or
operation of the motor vehicle, except as a stationary platform from which product
was being unloaded. The injury did not occur by virtue of the inherent nature of using
a motor vehicle."[36]

Based on Delaware law and the record, Mr. Jarrett's vehicle was not an "active
accessory" in causing his injuries. Like *Sanchez* and *Friel*, Mr. Jarrett's location was
the only connection between his injury and the vehicle. Mr. Jarrett could just have
easily been struck by the fallen tree if he had used another means to transport his
tools. If for example, Mr. Jarrett had carried his tools with him in a tool box, he would
have been struck by the tree if he had placed the tool box in the same place that he
parked his car. Therefore, as the presence of Mr. Jarrett's vehicle had a negligible
impact on the events causing Mr. Jarrett's injury, there was no causal connection
between Mr. Jarrett's use of the vehicle and his injuries.

As the Court finds that Mr. Jarrett's vehicle was not an "active accessory" in
causing his injuries, the Court declines to address the "independent significance"
prong of *Kelty* because it is unnecessary under the circumstances.

## CONCLUSION

The Court finds that Mr. Jarrett qualifies as an "occupant " of his vehicle, under

---

[35] *Id.* at *4.

[36] *Id.* at *5 (citing *Kelty*, 73 A.3d at 931 n. 29).

12

*Lamar Jarrett v. Titan Indemnity Co.*
C.A. No. K16C0960925 WLW
December 11, 2017

the first prong of the *Fisher* test, because Mr. Jarrett was within a reasonable geographic perimeter of the vehicle when the injury occurred. However, the Court also finds that Mr. Jarrett's vehicle does not qualify as an "active accessory" in causing his injuries, under the first prong of the *Kelty* test, because the vehicle constituted the mere situs of Mr. Jarrett's injuries. Therefore, Mr. Jarrett is not eligible for PIP benefits because he was not injured in an accident involving his Titan insured motor vehicle, as required by statute and defined by case law.

Titan Indemnity Company's Motion for Summary Judgment is hereby **GRANTED.**

IT IS SO ORDERED.

/s/ *William L. Witham, Jr.*
Resident Judge

WLW/dmh